UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

RECEIVED
2014 FEB 12  P 9: 39
U S DISTRICT COURT SDNY

| | |
|---|---|
| PAUL SPINELLI; SCOTT BOEHM; PAUL JASIENSKI; GEORGE NEWMAN LOWRANCE; DAVID STLUKA; DAVID DRAPKIN; and THOMAS E. WITTE, <br><br> *Plaintiffs,* <br><br> v. <br><br> NATIONAL FOOTBALL LEAGUE; NFL PROPERTIES, LLC; NFL VENTURES, L.P.; NFL PRODUCTIONS, LLC; NFL ENTERPRISES, LLC; REPLAY PHOTOS, LLC; GETTY IMAGES (US), INC.; ASSOCIATED PRESS; ARIZONA CARDINALS HOLDINGS, INC., ATLANTA FALCONS FOOTBALL CLUB LLC, BALTIMORE RAVENS LIMITED PARTNERSHIP, BUFFALO BILLS, INC., PANTHERS FOOTBALL LLC, CHICAGO BEARS FOOTBALL CLUB, INC., CINCINNATI BENGALS, INC., CLEVELAND BROWNS LLC, DALLAS COWBOYS FOOTBALL CLUB, LTD., DENVER BRONCOS FOOTBALL CLUB, DETROIT LIONS, INC., GREEN BAY PACKERS, INC., HOUSTON NFL HOLDINGS LP, INDIANAPOLIS COLTS, INC., JACKSONVILLE JAGUARS LTD., KANSAS CITY CHIEFS FOOTBALL CLUB, INC., MIAMI DOLPHINS, LTD., MINNESOTA VIKINGS FOOTBALL CLUB LLC, NEW ENGLAND PATRIOTS, LP, NEW ORLEANS LOUISIANA SAINTS, LLC, NEW YORK FOOTBALL GIANTS, INC., NEW YORK JETS FOOTBALL CLUB, INC., OAKLAND RAIDERS LP, PHILADELPHIA EAGLES FOOTBALL CLUB, INC., PITTSBURGH STEELERS SPORTS, INC., SAN DIEGO CHARGERS FOOTBALL CO., SAN FRANCISCO FORTY NINERS LTD., FOOTBALL NORTHWEST LLC, THE RAMS FOOTBALL CO. LLC, BUCCANEERS LIMITED PARTNERSHIP, TENNESSEE FOOTBALL, INC., and WASHINGTON FOOTBALL INC., <br><br> *Defendants.* | No. 13-cv-07398 (RWS) <br><br> Hon. Robert W. Sweet <br><br> **FIRST AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL** |

Plaintiffs Paul Spinelli, Scott Boehm, Paul Jasienski, George Newman Lowrance, David Stluka, Thomas Witte, and David Drapkin ("Plaintiffs"), by and through counsel, for their First Amended Complaint against Defendants National Football League; NFL Properties, LLC; NFL Ventures, L.P.; NFL Productions, LLC; NFL Enterprises; Replay Photos, LLC; Getty Images (US), Inc.; Associated Press; and the 32 NFL member teams (collectively "Defendants"), state as follows.  Except as to allegations related specifically to the actions of the Plaintiffs, the allegations herein are based upon information and belief.

## THE PARTIES

1.     Plaintiffs are professional photographers who make their living taking and licensing sports-related photographs, including but not limited to content related to National Football League ("NFL") practices, games, functions, and other events.

2.     Plaintiff Paul Spinelli ("Spinelli") is a resident of the State of California.  Plaintiff Spinelli is the sole owner of and does business through SpinPhotos, Inc. whose principal place of business is Long Beach, California.  Plaintiff Spinelli formerly was a Director of the NFL's now-dissolved Photographic Services division ("NFL Photos").

3.     Plaintiff Scott Boehm ("Boehm") is a resident of the State of Illinois.  Plaintiff Boehm is the sole owner of and does business through Boehm Creative, Inc. whose principal place of business is Lake Villa, Illinois.

4.     Plaintiff Paul Jasienski ("Jasienski") is a resident of the State of Nevada.

5.     Plaintiff George Newman Lowrance ("Lowrance"), who is known professionally as G. Newman Lowrance, is a resident of the State of Kanas.

6.     Plaintiff David Stluka ("Stluka") is a resident of the State of Wisconsin.  Plaintiff Stluka is the sole owner of and does business through David Stluka Photography, LLC whose principal place of business is Oregon, Wisconsin.

7.     Plaintiff David Drapkin ("Drapkin") is a resident of the State of New Jersey.

8.     Plaintiff Thomas E. Witte ("Witte") a resident of the State of Ohio.  Plaintiff Witte is the sole owner of and does business through GO Photography whose principal place of business is Cincinnati, Ohio.

9.     Defendant NFL is a tax-exempt association formed under 18 U.S.C. § 501(c)(6) with its business headquarters located at 280 Park Avenue, New York, New York.

10.    Defendant NFL operates several business units, divisions, and/or corporate entities through which it carried out the misconduct described herein and each of which also participated in the misconduct described herein.

11.    The NFL's business units or entities involved in the misconduct alleged herein include, but are not limited to, Defendant NFL Properties, LLC ("NFL Properties").  NFL Properties' business address also is 280 Park Avenue, New York, New York.

12.    The NFL also does business as or exclusively controls other various business entities, including NFL Enterprises, also located at 280 Park Avenue, New York, New York; and the NFL Network, located at 10950 Wash Boulevard, Culver City, California.

13.    Defendant NFL Ventures, L.P. ("NFL Ventures") is a limited partnership based in Delaware that advertises, promotes and markets the NFL, its brand and products, and its member teams.    Defendant NFL Venture's wholly-owned subsidiaries include Defendants NFL Productions LLC and NFL Enterprises LLC.

14.    Defendant NFL Productions LLC, also known as NFL Films LLC ("NFL Films"), produces NFL-related programming for the NFL and its member teams.  NFL Films also provides services, including licensing of NFL-related content to customers operating in the entertainment and media industries.

15.    Defendant NFL Enterprises LLC ("NFL Enterprises") sells, advertises and promotes the NFL and its interests, including by operating the NFL's primary website located at www.nfl.com ("NFL.com").

16.    Defendants NFL, NFL Properties, NFL Ventures, NFL Films, and NFL Enterprises are referred to herein collectively as "the NFL Entities" and/or "the NFL Defendants" and/or simply "the NFL."  Each of these business divisions or entities operates under the exclusive control of the National Football League.

17.    Defendant Getty Images (US), Inc. ("Getty Images"), a New York corporation, is the world's largest aggregator and licensor of "stock" photography, including sports-related photo collections.  Plaintiffs formerly licensed their NFL photos at issue in this lawsuit through Getty Images.

18.    Defendant Associated Press ("AP"), a New York Corporation, describes itself as a not-for-profit news "cooperative" that is owned by and made up of over 1,400 newspapers and media organizations.  AP's headquarters is located in New York, New York.  In addition to other services and products, AP also acts a licensing agent for stock photography collections. Plaintiffs currently license their NFL photos at issue in this lawsuit through AP.

19.    Defendant Replay Photos, LLC ("Replay Photos") is a North Carolina Limited Liability Company.  Replay Photos is an online retailer that specializes in selling sports-related

photographs.  Replay Photos' primary place of business is located in Durham, North Carolina.
Replay Photos' owns and operates the website located at www.replayphotos.com.

20.     Replay Photos and AP cooperatively own, control, and operate the "NFL Photo
Store," which is a website that sells posters, prints, and canvases of NFL-themed images.

21.     The remaining Defendants are the 32 NFL member teams: Arizona Cardinals
Holdings, Inc.; Atlanta Falcons Football Club LLC; Baltimore Ravens Limited Partnership;
Buffalo Bills, Inc.; Panthers Football LLC; Chicago Bears Football Club, Inc.; Cincinnati
Bengals, Inc.; Cleveland Browns LLC; Dallas Cowboys Football Club, Ltd.; Denver Broncos
Football Club; Detroit Lions, Inc.; Green Bay Packers, Inc.; Houston NFL Holdings LP;
Indianapolis Colts, Inc.; Jacksonville Jaguars Ltd.; Kansas City Chiefs Football Club, Inc.;
Miami Dolphins, Ltd.; Minnesota Vikings Football Club LLC; New England Patriots, LP; New
Orleans Louisiana Saints, LLC; New York Football Giants, Inc.; New York Jets Football Club,
Inc.; Oakland Raiders LP; Philadelphia Eagles Football Club, Inc.; Pittsburgh Steelers Sports,
Inc.; San Diego Chargers Football Co.; San Francisco Forty Niners Ltd.; Football Northwest
LLC; and The Rams Football Co. LLC; Buccaneers Limited Partnership; Tennessee Football,
Inc.; and Washington Football Inc.  These Defendants are referred to herein collectively as the
"NFL Teams" or individually as an "NFL Team."

22.     Each of the NFL Teams operates as a separate and unitary business entity.  Each
of the NFL Teams is a separately-owned and independent entity which operates a for-profit
professional football franchise in its respective city.  Each of the NFL Teams owns and markets
its own name, colors, logos, trademarks, and other intellectual property.  And each of the NFL
Teams competes with the other NFL Teams for customers of its apparel, clothing, souvenirs,
memorabilia, and other commercial products and goods.

23.     Although each NFL Team is an independent business entity, they conspired and acted in concert to form the NFL and its various subsidiaries, including NFL Properties, for the express purpose of influencing and fixing the market for commercial licensing of NFL-related stock photographs.

24.     In furtherance of their conspiracy, the NFL Teams authorized the NFL and/or NFL Properties to make decisions regarding their separately owned intellectual property.  The NFL Teams also authorized the NFL and/or NFL Properties to grant an exclusive license to a single licensing company to market and sell commercial licenses for all stock photography of NFL-related photos.

25.     With the authorization of the NFL and the NFL Teams, NFL Properties granted an exclusive license to Getty Images to be the sole commercial licensor of all NFL-related stock photographs.  The NFL's agreement with Getty Images expired in 2009.  Until that time, the NFL's agreement with Getty Images purported to grant Getty Images exclusive control over all commercial licensing rights to any NFL-themed photos, even if the particular photos did not include any intellectual owned by the NFL.

26.     In 2009, again with the authorization of the NFL and the NFL Teams, NFL Properties entertained bids for the exclusive commercial licensing rights for NFL and NFL Team photos and eventually selected AP to be the sole commercial licensor such photographs.  Once again, the NFL's agreement with AP purported to grant AP exclusive control over all commercial licensing rights to any NFL-themed photos, even if the particular photos did not include any intellectual owned by the NFL.

27.     In 2012, NFL Properties again entertained bids for the exclusive commercial licensing rights for NFL and NFL Team photos and eventually renewed its agreement with AP.

28.     By these actions and agreements, the NFL Teams and the NFL Entities conspired to and did illegally restrain trade and influence the market for commercial licensing of stock photography.   The NFL Teams and NFL Entities exercised their illegally monopoly and restrained trade in concert with Getty Images and AP.

## NATURE OF THE ACTION

29.     This is an action for violations of the Sherman Act and Copyright Act and other related claims brought by Plaintiffs against Defendants for violations of the antitrust laws and unauthorized uses of Plaintiffs' copyrighted photographs.

30.     For many years, Plaintiffs obtained media credentials – either through their agents, Getty Images and AP, or directly from the NFL's member teams via NFL Photos which previously was the NFL's in-house photo services department – to photograph events for the NFL and individual NFL Teams.

31.     Plaintiffs collectively have photographed hundreds, if not thousands, of NFL regular season games, NFL playoff games, NFL Team practices, NFL Team events, and other NFL functions.   Over their careers, each Plaintiff has amassed a large collection or "library" of NFL-related photographs.   Together, Plaintiffs have taken literally hundreds of thousands of NFL-related photographs.

32.     Plaintiffs primarily photographed NFL events and games under so-called speculation agreements (or "on spec"), meaning that instead of being paid flat fees (also called "day rates") for their work they retained ownership of the copyrights in the photos that they took during an event and then earned income by licensing their photos.

33.     This action involves only those photos that Plaintiffs created "on spec" and thus pertains only to those photos in which Plaintiffs retained and currently own copyrights; this

action does not involve any photos that Plaintiffs occasionally may have created under day-rate or work-for-hire agreements.  All allegations herein related to Plaintiffs' photographs refer only to those photographs that Plaintiffs created "on spec" and to which they own copyrights.

34.    Plaintiffs' photo libraries include tens of thousands of photos featuring only specific players, team logos, team stadiums, team cheerleaders, or other content that does not include any marks, logos, or other intellectual property owned by the NFL Entities.

35.    Plaintiffs' photo libraries include tens of thousands of photos taken at NFL Team practices, functions, and events that were not organized by the NFL and feature no logos, marks, or other intellectual property owned by the NFL Entities.

36.    Although Plaintiffs' licensed the photos that they shot "on spec" through third-party licensing agents (formerly NFL Photos and then Getty Images and currently AP), they never transferred their copyrights in these photos to their agents.   Rather, as Plaintiffs' contributor agreements with both Getty Images and AP expressly provided, they retained sole and exclusive ownership of all copyrights in these photos.

37.    This action concerns the efforts by the NFL Team and the other NFL Defendants to blatantly conspire to create a monopoly in favor of the NFL in order to illegally restrain trade and otherwise fix and control the market for commercial licensing of NFL-related "stock" photos.

38.    The agreements between the Defendants challenged in this action are not limited to the NFL's own intellectual property.   Rather, the agreement by and between the NFL Teams and NFL to create NFL Properties and grant exclusive licensing rights for all NFL-themed photos included and applied to even those photos that included only the marks, logos, and other

intellectual property of the individual NFL Teams and do not include any marks, logos, or other intellectual property owned by the NFL Entities.

39.     This action also concerns the NFL Defendants' rampant, willful, and continued misuse of photographs to which Plaintiffs own copyrights.

40.     This action also involves Getty Images' and AP's illegal and unethical misconduct which permitted, encouraged, and contributed to the NFL Defendants' illegal restraint of trade and infringements of Plaintiffs' copyrights.

## VENUE AND JURISDICTION

41.     Jurisdiction for Plaintiffs' claims lies with the United States District Court for the Southern District of New York pursuant to the Sherman Act, 15 U.S.C. §§ 1, *et seq.*; the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*; 28 U.S.C. § 1331 (conferring original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States"); and 28 U.S.C. § 1338(a) (conferring original jurisdiction over claims arising under any act of Congress relating to copyrights).

42.     This Court has jurisdiction over Plaintiffs' state and common law claims under 28 U.S.C. § 1967 because those claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy.

43.     Venue is proper in this Court under 28 U.S.C. § 1391(b) since the alleged misconduct by Defendants giving rise to the claims asserted herein occurred in this District and 28 U.S.C. § 1400(b) since Defendants infringed Plaintiffs' copyrights in this District.  All Defendants also reside in or conduct substantial business in this District, including business directly related to the claims at issue in this action.

## FACTUAL ALLEGATIONS

44.     Beginning in approximately 1965, the NFL formed and operated a division called NFL Photographic Services or "NFL Photos" which effectively operated as an "in-house" photo library and licensing agency.   Through NFL Photos, the NFL actively solicited photography from and hired freelance photographers in order to expand the NFL's brand, including through the licensing of photos to media outlets and commercial entities, as well as by publishing its own magazines, newsletters, books, and public relations and other promotional materials.

45.     NFL Photos operated much like the more well-known NFL Films, except with an emphasis on "still" photography rather than film and video footage.   One crucial difference, however, is that while the NFL generally owns the copyrights to the film and video footage now controlled by NFL Films, the NFL typically does not own copyrights in the still photos that it uses because the vast majority of photos are created by freelance photographers working "on spec."   Another crucial difference is that, unlike film footage, even still photography created at NFL games and events does not necessarily include any intellectual property owned by the NFL.

46.     Beginning in approximately 2003, the NFL transitioned away from an "in-house" photo library to licensing arrangements with established stock photography agencies, including Getty Images and WireImage.   When Getty Images purchased WireImage's parent, MediaVast, in 2007, Getty Images obtained exclusive commercial licensing rights for NFL-related photos. Getty Images retained the exclusive NFL licensing rights until 2009.

47.     At various times during this period, each Plaintiff entered into a "contributor agreement" with Getty Images pursuant to which Getty Images acted as Plaintiffs' agent and facilitated the licensing of their works, including but not limited to Plaintiffs' NFL photo collections.

48.    Under their contributor agreements with Getty Images, Plaintiffs expressly retained all copyrights in the images that they provided to and licensed through Getty Images.

49.    Plaintiffs' contributor agreements with Getty Images also permitted Plaintiffs, at the time of submission, to identify their images as "Rights Managed" photos and also to specify additional usage restrictions for any specific photos submitted for licensing through Getty Images' Rights-Managed collection.

50.    Getty Images expressly agreed to honor all restrictions that Plaintiffs placed on the licensing of their photos, including that such images must be licensed as "Rights Managed" photos and marketed through Getty Images' Rights-Managed collection.

51.    Plaintiffs' contributor agreements with Getty Images required that Getty Images pay higher royalty rates to Plaintiffs for images licensed through Getty Images Rights-Managed collections than its Royalty-Free collection and products.

52.    All of the photos at issue in this suit were submitted by Plaintiffs as "Rights Managed" images and were accepted and marketed by Getty Images in its Rights-Managed collections.  Getty Images never notified Plaintiffs that it intended to move any specific photos, let alone each Plaintiffs' entire library of photos, into its Royalty-Free collection or that it intended to license their photos according to the Royalty-Free licensing model.

53.    Plaintiffs' contributor agreements with Getty Images also required that Getty Images make periodic reports of all sales and other transactions pertaining to their photos and to pay the necessary royalties due to Plaintiffs for all such sales and transactions during that period.

54.    In or about 2009, the NFL, through NFL Properties, accepted new bids for the exclusive right to grant commercial licenses related to NFL-related photographic content.  The

NFL eventually selected AP's bid.  The NFL, again through NFL Properties, subsequently entered into an exclusive licensing agreement with AP.

55.    As a direct consequence of the NFL's decision to grant an exclusive license to AP, Plaintiffs lost the ability to sell higher-value commercial licenses (as opposed to editorial licenses) through Getty Images.  Thus, if Plaintiffs wished to continue offering commercial licenses for their NFL content, they were forced to transition their entire NFL collections to AP.

56.    This option presented difficulties, however, because Plaintiffs also own the copyrights to and license other sports-related content, including photographs of Major League Baseball ("MLB") and National Collegiate Athletic Association ("NCAA") games and events, and Getty Images had exclusive licensing deals and/or significant licensing partnerships with these entities, including MLB.

57.    In a blatant attempt to exploit this dilemma, Getty Images threatened to remove Plaintiffs' other sports content from its distribution networks and/or terminate its relationship with Plaintiffs entirely if they did not agree to continue licensing their NFL content through Getty Images even after its commercial licensing deal with the NFL expired.  Getty Images also made clear that it would not "welcome back" any contributors who moved their NFL content to AP should Getty Images ever regain the rights to license NFL content in the future.

58.    Because certain Plaintiffs had significant non-NFL content at Getty Images, including significant MLB and NCAA photo collections, Getty Images' position forced Plaintiffs to make an impossible choice between losing commercial licensing opportunities for their NFL content by not going to AP or giving up commercial licensing opportunities for their non-NFL content by leaving Getty Images.

59.     Plaintiffs Jasienski, Stluka, Spinelli, Witte, and Drapkin risked Getty Images'
wrath and moved their NFL content to AP beginning in 2009.

60.     Plaintiffs Lowrance and Boehm chose not to risk the loss of other licensing
opportunities and thus kept their NFL content at Getty Images.  As result, Plaintiffs Lowrance
and Boehm lost significant and valuable licensing opportunities for their NFL collections, which
included tens of thousands of photos each, by leaving those images at Getty Images.

61.     Although Getty Images ultimately sub-licensed Lowrance's and Boehm's
collections through AP, the number of sales was significantly diminished given AP's licensing
priorities and these Plaintiffs were paid significantly lower royalties because both Getty Images
and AP withheld their respective percentage of the license fees and thus Plaintiffs Lowrance and
Boehm were effectively "double charged" for each license.

62.     Eventually all Plaintiffs ended their relationships with Getty Images and entered
into agreements to license their NFL content through AP.

63.     As a result, Plaintiffs have lost significant revenue due to the loss of licensing
opportunities for their non-NFL content that resulted from the termination of their relationships
with Getty Images.

64.     Under their contributor agreements with AP, Plaintiffs again expressly retained
copyrights in the images that they provided to and licensed through AP.

65.     Plaintiffs' contributor agreements did not expressly (or impliedly) grant AP the
right to initiate civil actions under the Copyright Act or otherwise pursue infringement claims
concerning violations of Plaintiffs' copyrights.  Nor did Plaintiffs grant AP co-ownership of their
copyrights in submitted photos.  And, as far as Plaintiffs are aware, AP has never attempted to
register any claim for copyrights in any photos submitted by Plaintiffs for licensing by AP.

66.     Like their photos submitted to Getty Images, Plaintiffs submitted their photos to AP for Rights-Managed licensing and AP agreed to include and did include Plaintiffs' photos in only its Rights-Managed collections.

67.     AP never notified Plaintiffs that it intended to grant "complimentary" and/or "non-royalty bearing" licenses related to their photos.

68.     Plaintiffs' contributor agreements with AP also required that AP make periodic reports of all licenses pertaining to their photos and to pay the necessary royalties due to Plaintiffs for all licenses during that period.

69.     Both Getty Images and AP represented and licensed Plaintiffs' photos at issue in this action on a "Rights Managed" basis meaning that the licenses sold by these agencies were permitted to grant only limited usage rights to the customer/licensee and the license fees charged by the agencies, and thus the royalties paid to Plaintiffs, were calculated based upon the scope of rights being granted.

70.     In Rights-Managed licensing, a license that granted the end user broader usage rights (such as allowing commercial use of the licensed photos) would require a higher license fee than a license granting more narrow usage rights (such as allowing only limited editorial uses).

71.     As the name suggests, Rights-Managed licensing also requires that the licensor (in this case, Getty Images and AP) track and manage the usage rights being granted to end users. This is crucial for several reasons, including that fees are directly linked to the usage rights being granted and also because the ability to subsequently grant high-value "exclusive" licenses depends on the licensor's ability to assure a prospective client that no other comparable rights have been granted to other customers, especially the prospective client's competitors.

72.     Despite the fundamental obligations to license Plaintiffs' works according to these principles inherent in the Rights-Managed licensing model, including to track usage rights and also charge appropriate market value for each license, Plaintiffs recently discovered that both Getty Images and AP granted the NFL nearly unfettered access to Plaintiffs' photo collections and, either expressly or by inaction, allowed the NFL to make free or "complimentary" use of Plaintiffs' copyrighted photos.  In doing so, Getty Images and AP not only failed to charge the NFL appropriate market value for licenses to use thousands of Plaintiffs' photos, they both also failed to monitor, track, or responsibly manage the NFL's use of Plaintiffs' photos.

73.     The failure of Getty Images and AP to track and monitor the NFL's use of Plaintiffs' photos severely undermines the future value of their copyrighted works.

74.     As a result of this misconduct by AP and Getty Images, the NFL was able to widely copy, display, publish, and distribute thousands of Plaintiffs' copyrighted works without ever paying *any* compensation to Plaintiffs and without ever reporting *any* of the uses it has made of Plaintiffs' works.

75.     The NFL Defendants have earned substantial revenue through publishing Plaintiffs' photographs, including by publishing their works in its various national and international websites; in NFL Magazine; in NFL-sponsored advertisements; on the NFL Network; and in countless other NFL-controlled publications.  Despite such widespread and ongoing use, the NFL Defendants never paid appropriate licensing fees to Plaintiffs or their agents.  Instead, the NFL Defendants leveraged their illegal monopoly to obtained unfettered access to Plaintiffs' works and force Plaintiffs' agents to purportedly grant "complimentary" or "non-royalty bearing" licenses.

76.     Plaintiffs have never received any compensation in exchange for the NFL Defendants' prolific and ongoing use of thousands of Plaintiffs' photos.

77.     When NFL Properties entered into its licensing agreement with Getty Images, the NFL was not granted free or "complimentary" use of photographic content.  Nor was the NFL granted a "Royalty Free" license to use photos owned by Plaintiffs.  Indeed, because Getty Images did not own the content in Plaintiffs' image collections and also because Plaintiffs' photos were submitted to Getty Images as Rights Managed images, Getty Images lacked authority to grant such unfettered usage rights or complimentary and indefinite use licenses to the NFL without obtaining separate and express permission from Plaintiffs for each such "complimentary" license or use.

78.     Plaintiffs' contributor agreements with Getty Images precluded Getty Images from granting usage rights at no cost and Getty Images' own standard terms and conditions for usage licenses pertaining to its Rights Managed collections photos prohibited such use.

79.     When NFL Properties entered into its exclusive licensing agreement with AP in 2009, that agreement also did not grant the NFL an unrestricted and indefinite license to use any of Plaintiffs' content for free.

80.     Like their prior agreements with Getty Images, Plaintiffs' contributor agreements with AP also did not permit AP to grant free and unfettered licenses to customers, including the NFL.  Indeed, the entire purpose of Plaintiffs' agreements with AP was to generate revenue for Plaintiffs through royalties earned from license fees.  The notion that AP was authorized to grant its customers complimentary or "non-royalty bearing" licenses that allowed the customers complete and unrestricted access to all of Plaintiffs' photos and yet provided no compensation to Plaintiffs is anathema to the fundamental purpose and objective of their agreement.

81.     Significantly, Plaintiffs' contributor agreements with AP also did not grant AP authority to pursue infringements or negotiate settlements on behalf of Plaintiffs.   On the contrary, each Plaintiff's contributor agreement with AP expressly provided that the photographer retained all copyrights in his work, which would include the exclusive right to pursue claims for infringements.

82.     Despite these restrictions and limits on AP's authority, Plaintiffs discovered that AP was permitting the NFL to use Plaintiffs' photos without paying for any usage rights and without reporting usages to Plaintiffs on their royalty statements.   Given AP's total lack of reporting of NFL usages, it is clear that AP did not make any effort to track or monitor the NFL's use of Plaintiffs' photos.   To this date, AP has never identified which of the photos owned by Plaintiffs that it provided to the NFL or whether the NFL currently possesses high-resolution copies of the photos acquired from AP.

83.     When Plaintiffs contacted the NFL to demand that it cease and desist using their copyrighted works without permission and without paying the requisite licensing fees, the NFL falsely represented that its 2009 contract with AP included an express license that allowed complimentary use of any NFL-related photos licensed by AP, including all photos owned by Plaintiffs.

84.     Because such a license would violate the express terms and fundamental purpose of Plaintiffs' agreements with AP, Plaintiffs contacted AP to inquire about the NFL's seemingly preposterous claim.   As expected, AP denied the NFL's claim and assured Plaintiffs that not only did the 2009 agreement between AP and NFL not include such a license, but the AP was currently renegotiating its agreement with the NFL to address the widespread misuse of photos by the NFL.

85.     Thereafter, AP agreed to allow Plaintiffs input into this negotiation process, and AP and Plaintiffs also began negotiating amendments to Plaintiffs' contributor agreements to allow the NFL very narrow, specific, and limited usage rights pertaining to Plaintiffs' works in exchange for specific and appropriate consideration.

86.     During these contract negotiations, AP inexplicably decided to grant the NFL a purported "license" that was complimentary and "Royalty Free" and "retroactive" to 2009.  The AP made the unilateral decision to grant this purported "license" without ever advising Plaintiffs of its intention to do so, without their consent, and despite their express objections.

87.     The clear purpose of the retroactive "license" granted to the NFL by AP was to release or extinguish the copyright infringement claims that Plaintiffs recently had brought to the NFL's attention and to attempt to insulate the NFL Defendants from liability for the copyright infringements identified herein and that are the subject of this action.

88.     AP granted this retroactive "license" to the NFL under threats and coercive pressure by the NFL, including the threat of moving its exclusive license back to Getty Images, which also had submitted a bid to reacquire the NFL's business.

89.     Again, Plaintiffs' contributor agreements with AP do not authorize AP to pursue infringements or settle claims on their behalf, and Plaintiffs never authorized AP to grant any release to any infringers and certainly did not agree that AP could do so without notifying Plaintiffs in advance and without Plaintiffs receiving any compensation.

90.     In addition to violating its license, AP's conduct is clear-cut and egregious self-dealing clearly intended to unjustly enrich AP and the NFL at Plaintiffs' expense.

91.     Plaintiffs' contributor agreements with AP also included minimum royalty payments requiring AP to pay a minimum royalty payment per each photo sale.  In other words,

Plaintiffs' contracts with AP expressly prohibit AP from granting "free" or "complimentary" usage rights to any licensee, including the NFL Defendants.

92.     The 2012 agreement between the NFL and AP violates Plaintiffs' agreements with AP and the purported retroactive/royalty-free/complimentary "license" granted therein is invalid.

93.     The use of photographic works is one of the key ways that the NFL markets and promotes itself.  The NFL, however, does not own the copyrights to the vast majority of the photographic content that it uses, including the works created by Plaintiffs.  As such, the NFL must obtain licenses prior to using Plaintiffs' works.

94.     Despite being well aware that it does not own the copyrights to Plaintiffs' works and its own 38-years of experience operating NFL Photos as a stock photo agency that managed the licensing of photos owned by its contributing photographers, the NFL systemically used thousands of Plaintiffs' photos for promotional, marketing, and commercial purposes without a license or permission from Plaintiffs or their agents – that is until 2012 when the NFL leveraged its illegal monopoly to force AP to purportedly grant a retroactive/royalty-free/complimentary "license" to use Plaintiffs' works for the express purpose of attempting to avoid Plaintiffs' claims for copyright infringement.

95.     The NFL exploited its illegal control and monopoly of the commercial licensing rights to NFL content to force Getty Images and now AP to grant the NFL unfettered access to Plaintiffs' image libraries and to rob Plaintiffs of their rightful compensation for such uses.

96.     The NFL has been able to convince Plaintiffs' licensing agents to purportedly allow this rampant and blatant exploitation of Plaintiffs' works only because of its illegal monopoly over the commercial licensing rights to NFL content.

97.     At the time the NFL and AP negotiated this purported "license," both entities were well aware that Plaintiffs did not condone the free or complimentary use of their works by the NFL.

98.     Despite Plaintiffs' issuing repeated cease and desist demands, the NFL Defendants continue to use thousands of Plaintiffs' photographic works to promote the NFL's brand, sell NFL-related products, and enhance the NFL's image in order to generate revenue both as an independent entity and on behalf of the NFL Teams.  The NFL Defendants' unlicensed use of Plaintiffs' copyrighted photos is broad and ongoing.

99.     The NFL has used and continues to use hundreds of Plaintiffs' photos on the NFL's main website, NFL.com.

100.    The NFL also has illegally exported copies of Plaintiffs' works in order to publish them on its international websites, including www.nfljapan.com; www.nflmexico.com; and www.nfl.com/international.

101.    The NFL also has copied and published Plaintiffs' works in printed publications, including NFL Magazine, the NFL's Super Bowl Programs, the NFL's Reports and Newsletters, and even in NFL regular season and playoff game programs distributed by individual NFL Teams to its ticket-paying customers.

102.    The NFL also has used and continues to use Plaintiffs' photos on the NFL Network without ever paying for such use and without the uses being reported to Plaintiffs.

103.    In a particularly egregious example, the NFL used a photograph of Aaron Rodgers to promote Super Bowl XLV in Dallas by draping the image over a multi-story portion of the façades of the Omni Hotel and Cowboys Stadium.  Despite the fact that Plaintiff Stluka

owns sole and exclusive copyrights in this photo, Plaintiff Stluka was never paid any license fees for these uses of his photo.  (*See* Exhibit 12 at Lines 25 & 26)

104.    Attached hereto as Exhibits 1 to 7 are true and correct copies of recent screen captures from NFL.com showing the NFL's widespread use of each of the Plaintiffs' works.

105.    Although a very few number of the images included in Exhibit 1 through 7 were shot by Plaintiffs under "day rate" agreements for the NFL years ago, the vast majority of the astounding number of images currently being used by the NFL on its website were created by Plaintiffs "on spec" and they own sole and exclusive copyrights in these images.

106.    With respect to those images for which Plaintiffs own all copyrights, the NFL has never paid any fees or compensation to Plaintiffs for these uses and none of these uses has ever been reported by Getty Images or AP to Plaintiffs on any royalty report or otherwise.

107.    Attached hereto as Exhibits 8 to 14 are spreadsheets identifying hundreds of unauthorized and infringing uses of photos to which Plaintiffs own all copyrights.  As these spreadsheets demonstrate, the NFL Defendants have used and are continuing to use photos to which Plaintiffs own all copyrights on NFL.com, NFLJapan.com, the NFL Network, and in NFL Magazine.

108.    Plaintiffs' copyright infringement claims relate to all uses identified in Exhibits 8 to 14, and the information contained in these exhibits is fully incorporated herein.

109.    The NFL used and is using Plaintiffs' photos in various ways, including in conjunction with articles, as part of photo "essays," and also to create stand-alone photo "galleries."  Attached hereto as Exhibit 15 is a true and correct copy of the main photo gallery page on NFL.com.  Plaintiffs' photos are included in dozens of the galleries. Attached hereto as

Exhibit 16 are true and correct copies of screen captures from various photo galleries showing such uses of Plaintiffs' photos.

110.    Consistent with its practice of monetizing every possible interaction with its fan base, the NFL forces any visitor who views such photo "galleries" and "essays" to view advertisements and promotional materials after a pre-set number of "clicks" or photos viewed. Despite the plain commercial character and value of these uses of Plaintiffs' photos, the NFL has never paid any licensing fees to Plaintiffs, and certainly not the appropriate commercial licensing rates required for such uses.

111.    As the screen captures attached as Exhibit 16 demonstrate, the photo "galleries" on NFL.com permit visitors to access to large resolution copies of Plaintiffs' photos without appropriate copyright management information or protection against illegal copying.  The NFL also encourages visitors to "tweet" on Twitter.com or "share" on Facebook.com copies of Plaintiffs' works, despite the fact that the NFL does not own the copyrights to these photos.

112.    The NFL also has removed the copyright management information from Plaintiffs' photos, which constitutes separate and additional violations of the Digital Millennium Copyright Act.

113.    Certain photo galleries also include links that allow and encourage visitors to buy copies of the photos through www.nflshop.com, including many of Plaintiffs' photos.

114.    AP and Replay Photos also sell copies of photographs directly to consumers through the "NFL Photo Store," which is an interactive website located at www.nflphotostore.nfl.com.  The prints, posters, canvases, and other copies of Plaintiffs' photos that are sold through the NFL Photo Store are created by Defendant Replay Photos.  Attached hereto as Exhibit 17 are true and correct copies of screen captures showing numerous photos

owned by Plaintiffs Spinelli, Boehm, Lowrance, Stluka, and Witte that currently are for sale at the NFL Photo Store.  In each case, AP and/or Replay Photos incorrectly claim that AP owns copyright in the photos being offered for sale when in fact Plaintiffs own the sole and exclusive copyrights in each photo.

115.    Once again, although the NFL, AP, and Replay Photos are all selling prints, posters, canvases, and other copies of Plaintiffs photos, typically for hundreds of dollars, the NFL, AP, and Replay Photos have not paid any licensing fees, royalties, or other compensation to Plaintiffs for these uses.

116.    That AP and Replay Photos have sold and continue to offer for sale copies of Plaintiffs' photos is particularly egregious given that AP requested that Plaintiffs agree to amendments to their contributor agreements to allow such sales and Plaintiffs expressly rejected AP's request and did not agree to the proposed amendment to their contributor agreements.  The fact that AP requested an amendment to Plaintiffs' contributor agreements in order to offer their photos for sale through Replay Photos and the NFL Photo Store demonstrates that AP did not believe it was granted (and in fact it was not granted) such authority under its contributor agreements with Plaintiffs.  These infringements by AP and Replay are blatant and willful.

117.    The NFL also is using Plaintiffs' photographs during broadcasts on its newly-launched NFL Network.  Attached hereto as Exhibit 17 are true and correct copies of screenshots of the credits from recent broadcasts on the NFL Network demonstrating that the NFL Network used copies of Plaintiffs' photos during broadcasts.  In each case, the NFL Network falsely claimed that its use of Plaintiffs' photos was "courtesy of" Plaintiffs when, in actuality, Plaintiffs never agreed to allow the NFL Network to use their photos and were unaware of any such use by the NFL until recently.

118.     The NFL also is using Plaintiffs' photographs in its publication entitled NFL Magazine.  Attached hereto as Exhibit 19 are true and correct examples of Plaintiffs' photos being used by the NFL in NFL Magazine.

119.     Because Getty Images and AP failed to monitor, track, or report which photos were acquired by or provided to the NFL, Plaintiffs cannot yet determine the full scope of the NFL Defendants' use of their copyrighted works.  The infringements identified in Exhibits 8 through 14 merely highlight the scope of the NFL's uses of their photos and demonstrates that the NFL's unlicensed uses of Plaintiffs' photos is widespread and ongoing.

120.     Because information regarding the full scope of the NFL's use of Plaintiffs' photos remains in the Defendants sole possession, it is clear that the infringements identified herein and in Exhibits 8 through 14 are not exhaustive and that the NFL used many additional photos owned by Plaintiffs without a license and without paying necessary license fees.

121.     The NFL has realized substantial revenues from copying, publishing, displaying and licensing Plaintiffs' photographic content, including but not limited to fees paid by commercial entities selling copies of Plaintiffs' photos and also websites that use NFL-related photos in advertisements and to promote products, such as fantasy football leagues.

## COUNT I:  VIOLATIONS OF THE SHERMAN ACT
### AGAINST NFL DEFENDANTS, GETTY IMAGES, & AP

122.     Plaintiffs repeat and re-allege each of the above allegations as if set forth fully herein.

123.     The foregoing acts by the NFL Teams, NFL Defendants, Getty Images, and AP constitute violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

124.   The foregoing acts by the NFL Teams, NFL Defendants, Getty Images, and AP also constitute violations of Section 3 of the Sherman Act, 15 U.S.C. § 3.

125.   Each of the NFL Teams owns, controls, and operates a for-profit professional football franchise in its respective city.  Each NFL Team is independently owned and operates as an independent business entity.  Each NFL Team owns and markets its own name, colors, logos, trademarks, and other intellectual property.  And each NFL Team competes with the other NFL Teams for fans and customers, including consumers of team apparel, clothing, souvenirs, memorabilia, and other commercial products and goods.

126.   In violation of the Sherman Act, the NFL Teams conspired and acted in concert for the express purpose of restraining trade in and otherwise influencing and controlling the market for commercial licensing of NFL-related stock photographs.

127.   The NFL Teams conspired and carried out their illegal efforts to restrain trade in and create a monopoly over this market through agreements amongst themselves and with the NFL and its various subsidiaries, including agreements to create NFL Properties and to authorize it to control and make decisions relating to each NFL Team's independently owned intellectual property.

128.   In particular, the NFL Teams authorized the NFL and/or NFL Properties to grant an exclusive license to Getty Images and then AP to market and sell commercial licenses for stock photography of NFL-related photos.  In doing so, the NFL Teams and the other NFL Defendants conspired to and did illegally restrain trade and influence the market for commercial licensing of stock photography.

129.   The NFL Teams and NFL Entities conspired to and did illegally restrain trade in concert with Getty Images and AP.

130.    The agreements between the NFL Defendants and the NFL Teams, including their agreement to create NFL Properties and to authorize it to exercise exclusive control over the commercial market for photographs featuring NFL Teams or players, constitute and demonstrate a conspiracy to create a monopoly and otherwise illegally influence and restrain trade in this market and did in fact illegally restrain trade in this market.

131.    Plaintiffs' own all copyrights in the photographs at issue in this case, including each photo identified in Exhibits 8-14. Although Plaintiffs authorized Getty Images and AP to sell licenses related to their photos, Plaintiffs retained copyrights in their works.   Plaintiffs did not transfer or grant co-ownership of their copyrights to either Getty Images or AP; and neither Getty Images nor AP has ever attempted to register any copyright claims to any of Plaintiffs' photos at issue here.

132.    Despite the fact that Plaintiffs own the copyrights in these photos, they are unable to fully exercise their copyrights in a free and open marketplace due to the Defendants' illegal efforts to control and restrain the market for commercial licensing and sale of such photos.

133.    The NFL Teams conspired and acted in concert with the NFL to form NFL Properties for the express purpose of making joint decision and exercising a total monopoly over the lucrative market for commercial usage of NFL-related photos.

134.    The NFL, acting through NFL Properties, exercised and further entrenched its illegal monopoly by granting exclusive licenses to Getty Images and then AP to market and sell commercial licensing rights in NFL-related stock photos.

135.    The NFL Teams and other NFL Defendants violated the Sherman Act by conspiring to act and acting in concert to grant exclusive licenses to Getty Images and then AP to

control all commercial licensing of any NFL-related photographs, even if the photos do not feature any marks, logos, or other intellectual property owned by the NFL.

136.     The NFL's exclusive license agreements with AP and Getty Images are illegal restraints on trade because, among other things, the agreements purport to grant an exclusive license to all NFL-related photos (including those created by Plaintiffs) even if the photos feature only individual players, individual team colors, individual team logos, or other team-specific intellectual property that is individually owned by the respective NFL Team.

137.     The agreement to form and act in concert through NFL Properties to control the commercial market for stock photography and to exercise joint control over intellectual property owned by individual NFL Teams is not reasonably necessary to produce professional football games as entertainment.

138.     The NFL's exclusive license agreements with AP (currently) and Getty Images (formerly) are/were not reasonably necessary to produce professional football games as entertainment.

139.     The NFL's exclusive license agreements with AP and Getty Images are not reasonable or justifiable concerted action because, among other things, these licensing agreements purport to control the market for photos that do not involve NFL-organized games, including photos taken at team practices, team facilities, and other team events.

140.     The NFL's exclusive license agreements with Getty Images and AP also are illegal because they purport to apply to photos that feature only individual players, individual cheerleaders, individual coaches, individual team stadiums, individual team mascots, individual team colors, individual team logos, etc.

141.    The NFL's exclusive license agreements with Getty Images and AP arose from and constitute an illegal conspiracy to restrain trade.

142.    These Defendants, through their various officers, directors, employees, and other agents, conspired together to restrain trade in the lucrative and growing market for NFL-related stock photography and to artificially depress, fix, lower, and otherwise illegally control and influence the prices of such stock photography.

143.    The NFL's decision to grant an exclusive license to Getty Images and then AP precluded Plaintiffs from seeking or obtaining fair market value for commercial uses of their NFL photographs.

144.    The NFL's illegal monopoly and NFL Properties' agreement to grant an exclusive license to Getty Images and then AP also artificially undermined Plaintiffs' ability to bargain fairly with Getty Images and AP to obtain more favorable terms in their contributor contracts. The NFL Defendants' illegal conduct directly and proximately created the circumstances that forced Plaintiffs into a "take-it-or-leave-it" scenario when negotiating license terms with the NFL's chosen exclusive licensing partner (first Getty Images until 2009 and then AP thereafter). Because other licensors could not offer commercial licenses for NFL photos, Plaintiffs were forced into an impossible dilemma of either accepting the contract terms being offered by the NFL's licensing partner or losing the ability to earn revenue from the sale of more lucrative commercial licenses.

145.    Because Getty Images and then AP had secured exclusive rights to sell commercial licenses for stock NFL photos, Plaintiffs effectively had no choice but to license their works through Getty Images until 2009 and then were forced to abandon that relationship and move their entire libraries of NFL photos to AP.

146.    The decision by NFL Properties to grant exclusive licensing rights to a single licensor unfairly and illegally restricted the market for Plaintiffs' works and thus severely impacted and undermined the value of Plaintiffs' vast libraries of NFL photos that they had created over their careers.

147.    Being forced to move their photo libraries to AP after 2009 also caused Plaintiffs to lose significant licensing fees for their non-NFL content that was selling for higher rates or in larger volumes at Getty Images, particularly for those photo collections (*e.g.* MLB photo collections) for which Getty Images controls exclusive commercial licensing.

148.    If it were not for the NFL's illegal efforts to control the commercial licensing market for NFL-related stock photos, Plaintiffs' licensing agents would not have been forced to purportedly grant the NFL "complimentary" usage of Plaintiffs' photos.  Instead, Plaintiffs' agents could have negotiated licensing agreements with individual NFL Teams on better terms and/or Plaintiffs could have negotiated agreements with other licensing agents that precluded such unfair and inequitable terms.

149.    The decision by the NFL Teams to act in concert to form NFL Properties to illegally exercise joint control over the entire market for commercial usage of NFL-related photos undermined and decreased the value of Plaintiffs' photographs and violated Plaintiffs' rights as copyright owners to engage in a fair and open market for the sale and/or licensing of their works.  As a direct and proximate result of the Defendants' scheme and illegal conduct, Plaintiffs have been injured and financially damaged in amounts which are presently undetermined.

150.    The market for Plaintiffs' works includes licensors and retailers who target local and regional markets and thus have a high demand for commercial uses of player-specific or team-specific photos.

151.    The market for Plaintiffs' works also includes national photo licensors, media outlets, online vendors, clothing retailers, and any other companies that sell advertisements or products targeted at local viewers and/or customers and thus have a high demand for commercial uses of player-specific or team-specific photos.

152.    The market for Plaintiffs' works also includes companies and organizations that organize and market the multitude of increasingly popular fantasy football games and that sell products and advertisements directed at this market.  Companies that organize fantasy football leagues have created an enormous and ever-growing market for player-specific and team-specific photos, including for use in the operation of such fantasy football leagues and in advertisements and products targeted toward fantasy football participants.

153.    Plaintiffs collectively own tens of thousands of photos of specific players, team-specific mascots, team-specific logos, team-owned stadiums, and even team-specific cheerleaders.  Such photos do not feature any intellectual property owned by the NFL.  Instead, the logos, colors, marks, and other intellectual property in these photos are separately owned by the individual NFL Teams.

154.    The damage caused by Defendants' illegal and anticompetitive conduct substantially outweighs and alleged procompetitive effects that may be offered by the NFL's monopoly over commercial licensing of stock photos and its decision to grant an exclusive license to a single licensor.  Reasonable and less restrictive alternatives are available.

155.    The restraints challenged herein are not necessary to organize and/or produce professional football games.

156.    Plaintiffs seek and are entitled to declaratory judgment that the NFL Teams, NFL Defendants, Getty Images, and AP have and are violating Sections 1 and 3 of the Sherman Act.

157.    Plaintiffs seek and are entitled to preliminary and permanent injunctions under 15 U.S.C. § 26 that terminate the NFL's current agreement with AP and preclude any future global exclusive licensing arrangements between the NFL and any stock photography licensor.

158.    Plaintiffs seek and are entitled to preliminary and permanent injunctions under 15 U.S.C. § 26 that terminate the agreements between the NFL Teams, including the agreement to form NFL Properties, under which the NFL and/or NFL Properties exercise unitary control over stock photography that does not feature intellectual property owned by the NFL.

159.    Plaintiffs seek and are entitled to recover treble damages, as well as attorneys' fees and costs, under 15 U.S.C. § 15 relating to the violations alleged herein.

## COUNT II:  COPYRIGHT INFRINGEMENT
### AGAINST ALL DEFENDANTS

160.    Plaintiffs repeat and re-allege each of the above allegations as if set forth fully herein.

161.    The information included in the attached Exhibits is incorporated fully herein.

162.    The foregoing acts by Defendants infringed Plaintiffs' copyrights.

163.    Plaintiffs created and own sole and exclusive copyrights in and to the creative works identified in Exhibits 8-14.

164.    Plaintiffs also own copyrights to additional photos used and being used by the NFL Defendants without permission or a valid license.  Because the information regarding the

full scope of Defendants' use of Plaintiffs' photos remains in Defendants' sole possession, Plaintiffs cannot currently ascertain all uses of the works to which they own copyright.

165.    Plaintiffs' copyrights in and to photographs that are the subject of this action, including all photos identified in Exhibits 8-14, have been registered with the United States Copyright Office.

166.    The NFL Defendants and Replay Photos infringed Plaintiffs' copyrights by copying, publishing, displaying, exporting, and otherwise using and exploiting photographic works to which Plaintiffs own all copyrights without a valid license.

167.    Any purported license agreements between the NFL and Getty Images were illegal under the Sherman Act and thus did not and could not provide a valid license to the NFL to use or sublicense Plaintiffs' works.

168.    Even if they were not illegal under the Sherman Act, the NFL Defendants' license agreements with Getty Images did not provide any usage rights to the NFL unless and until it paid for a specific license to use a specific photo in a particular manner.  Contrary to these restrictions, the NFL routinely and repeatedly used Plaintiffs' photos with securing or paying for a valid license prior to such use; and made additional unauthorized uses of Plaintiffs' photos beyond the terms of the particular usage rights granted for a particular photo.

169.    Plaintiffs' contributor agreements with Getty Images permitted Plaintiffs to submit their photos as "Rights Managed" images and Plaintiffs did submit all of their photos to Getty Images as "Rights Managed" photos.

170.    Plaintiffs' contributor agreements with Getty Images required Getty Images to honor Plaintiffs' chosen licensing model and thus Getty Images was required to market and

license Plaintiffs' photos only through its Rights-Managed collection and to abide by the restrictions and requirements of the rights-managed licensing model.

171.    Getty Images violated the restrictions on its limited license, including by failing to abide by the restrictions and obligations of the rights-managed licensing model and by purportedly granting the NFL Defendants usage rights that exceeded the scope of Getty Images' licensing authority.

172.    When Plaintiffs agreed to transfer their NFL photo libraries to AP after 2009, AP agreed that it would respect and abide by Plaintiffs' choice to submit their libraries and new images as rights-managed photos.

173.    From 2009 to 2012, AP offered only rights-managed licenses for Plaintiffs' photos and never included Plaintiffs' photos in any royalty-free collections or offerings.

174.    The course of conduct and dealings between AP and Plaintiffs established that AP could license Plaintiffs' photos on a rights-managed basis only.

175.    AP's 2009 agreement with the NFL did not include any grant of a license or permission to the NFL to use Plaintiffs' photos without paying the required licensing fees and obtaining a limited license to use a particular photo.

176.    Despite the lack of any license from AP, the NFL Defendants made numerous uses of Plaintiffs' photos from 2009 to 2012 without ever paying any license fees or obtaining a valid license to use any particular photos.

177.    Upon discovering that AP was allowing the NFL essentially unfettered and "complimentary" access to their photos, Plaintiffs repeatedly advised AP to cease and desist and to preclude the NFL from accessing their photos without paying the necessary licensing fees.

178.    Plaintiffs also repeatedly advised or otherwise indicated to AP that they intended to pursue copyright infringement claims against the NFL relating to such unlicensed uses. Plaintiffs also advised or otherwise indicated to AP that they did not approve of AP granting any purported "retroactive" license to the NFL.

179.    During the negotiation of the NFL's 2012 agreement with AP, AP initially agreed with Plaintiffs and invited Plaintiffs to participate in the negotiations intended to limit the NFL's misuse of photos and, for appropriate consideration, grant the NFL limited usage rights going forward.

180.    The NFL, however, used its illegal monopoly over the commercial licensing rights for NFL-related photos as leverage to force the AP to submit, over Plaintiffs' clear objections, to the NFL's demands for a "retroactive" license.

181.    The 2012 purported license agreement between the NFL and AP is illegal under the Sherman Act and thus does not and cannot provide a valid license to the NFL to use or sublicense Plaintiffs' works.

182.    Even if it were not illegal under the Sherman Act, the purported retroactive or complimentary or royalty-free "license" granted by AP to the NFL in 2012 is invalid, including because AP did not have authority to grant such a "retroactive" license.

183.    At the time the NFL negotiated such a retroactive or complimentary or royalty-free "license" with AP, the NFL and AP were both aware that Plaintiffs did not authorize or consent to the NFL's complimentary use of their photos and that Plaintiffs objected to AP's granting any "non-royalty bearing" purported license to the NFL.

184.    Plaintiffs' contributor agreements with AP specifically provided that Plaintiffs retained all copyrights in their photos.

185.    AP is not a co-owner of any copyrights in Plaintiffs' photos.

186.    Plaintiffs' contributor agreements with AP did not grant AP the right to pursue infringements on their behalf, whether by bringing civil actions for infringements or informally through retroactive licensing.   As the sole owners of the copyrights in their photos, only Plaintiffs enjoy such rights under Section 501 of the Copyright Act.

187.    Plaintiffs' contributor agreements with AP allow AP to sell licenses to Plaintiffs' works.   No provision expressly or impliedly authorizes AP to grant any "complimentary" or "non-royalty bearing" licenses.   On the contrary, the express purpose of the agreements between Plaintiffs and AP was to generate licensing revenue.

188.    In addition to the express provisions of Plaintiffs' agreements with AP, the parties also had a clear course of dealing that established that Plaintiffs' photos were to be marketed and licensed only as rights-managed photo collections.   The parties' dealings also established that Plaintiffs did not grant AP authority to grant a "complimentary" or "retroactive" purported license to the NFL and, in fact, vehemently disapproved of such conduct.

189.    Because AP had no authority to pursue or settle copyright infringement claims on Plaintiffs' behalf, it was not permitted to grant a purported "retroactive" license to the NFL in 2012 in the hopes of releasing the NFL from liability for unlicensed uses of Plaintiffs' photos up to that date.

190.    AP's agreement with Plaintiff Lowrance was non-exclusive, and thus there was no possible basis for AP to believe that it had such authority with respect to Plaintiff Lowrance.

191.    Despite the written restrictions on AP's licensing rights and the understanding between the parties created by their course of dealing, AP still chose to cave in to the NFL's

pressure and granted the NFL a purported "license" that was retroactive and intended to release or extinguish Plaintiffs' copyright claims.

192.    By doing so, AP exceeded its limited rights to grant prospective licenses to Plaintiffs' works and thereby infringed their copyrights, including Plaintiffs' exclusive right to pursue infringement claims related to the unauthorized uses of their photos.

193.    Even after Plaintiffs expressly informed the NFL that Plaintiffs considered any implied license from AP or Getty Images or any retroactive "license" to be invalid and repeatedly demanded that the NFL cease and desist using their photos without paying for an appropriate license, the NFL Defendants continued using Plaintiffs' photos and continue to use their photos to this day.

194.    The NFL Defendants also infringed Plaintiffs' copyrights by illegally exporting their photos, including by copying and publishing them on foreign websites.

195.    AP also infringed Plaintiffs' copyrights by offering copies of Plaintiffs' photos for sale through its "NFL Photo Store" that it operates jointly with Defendant Replay Photos.

196.    Plaintiffs expressly rejected the AP's request to amend their contributor agreements to allow such copying and sales by Replay Photos.

197.    The fact that AP requested that Plaintiffs agree to amend their contributor agreements to allow such uses by Replay Photos demonstrates that even AP believed it lacked authority to license and use Plaintiffs' photos in this manner.

198.    Defendants' infringements and unauthorized use of Plaintiffs' copyrighted works was willful, intentional, and/or reckless.

199.    Plaintiffs seek all damages recoverable under the Copyright Act, including statutory or actual damages and Defendants' profits attributable to the infringements.

200.   Plaintiffs also seek all attorneys' fees and any other costs incurred in litigating this matter.

## COUNT III:   VICARIOUS COPYRIGHT INFRINGEMENT
### AGAINST GETTY IMAGES & AP

201.   Plaintiffs repeat and re-allege each of the above allegations as if set forth fully herein.

202.   The foregoing acts by Getty Images and AP constitute vicarious copyright infringement.

203.   Getty Images and AP were aware or should have been aware of the NFL's extensive copying and publishing of Plaintiffs' photos.

204.   Despite their responsibility to sell licenses for Plaintiffs' photos, Getty Images and AP ignored the NFL's misconduct and turned a "blind eye" to the NFL's infringements.

205.   Getty Images and AP directly contributed to the NFL's infringements, including by permitting unfettered access to Plaintiffs' works and making the intentional decision not to monitor or track the NFL's uses and not to require that the NFL report back all uses of Plaintiffs' photos.

206.   Despite their ability to do so, Getty Images and AP also failed to stop the NFL's infringements even after Plaintiffs brought the infringements to their attention.

207.   Getty Images' and AP's misconduct was willful, intentional, and/or reckless.

208.   Plaintiffs seek all damages recoverable under the Copyright Act, including statutory or actual damages and Defendants' profits attributable to the infringements.

209.   Plaintiffs also seek all attorneys' fees and any other costs incurred in litigating this matter.

## <u>COUNT IV:   CONTRIBUTORY COPYRIGHT INFRINGEMENT</u>
### AGAINST GETTY IMAGES & AP

210.    Plaintiffs repeat and re-allege each of the above allegations as if set forth fully herein.

211.    The foregoing acts by Getty Images and AP constitute contributory copyright infringement.

212.    Getty Images and AP were aware or should have been aware of the NFL's copying and publishing of Plaintiffs' photos.

213.    Despite their responsibility to sell licenses for Plaintiffs' photos, Getty Images and AP permitted, allowed, caused, contributed to, and/or encouraged the NFL to continuing using Plaintiffs' photos without paying the requisite license fees or reporting such uses to Plaintiffs.

214.    Getty Images and AP directly contributed to the NFL's infringements, including by permitting unfettered access to Plaintiffs' works and intentionally not monitoring or tracking the NFL's activities.

215.    Despite their ability to do so, Getty Images and AP also failed to stop the NFL's infringements even after Plaintiffs brought the infringements to their attention.

216.     Getty Images' and AP's misconduct was willful, intentional, and/or reckless.

217.    Plaintiffs seek all damages recoverable under the Copyright Act, including statutory or actual damages and Defendants' profits attributable to the infringements.

218.    Plaintiffs also seek all attorneys' fees and any other costs incurred in litigating this matter.

## COUNT V:   BREACH OF CONTRACT
### AGAINST GETTY IMAGES & AP

219.    Plaintiffs repeat and re-allege each of the above allegations as if set forth fully herein.

220.    Getty Images and AP breached their contracts with Plaintiffs through the foregoing acts.

221.    Plaintiffs' contributor agreements with AP specifically provided that Plaintiffs' retained all copyrights in their photos, including the exclusive right to pursue claims for infringements.

222.    As such, AP had no authority to grant the NFL a purported retroactive "license" intended to release Plaintiffs' copyright claims against the NFL.

223.    Plaintiffs' contributor agreements with Getty Images and AP also required each agency to charge license fees to customers and then pay a percentage of that fee to Plaintiffs as a royalty.

224.    By permitting the NFL unfettered access to and complimentary use of Plaintiffs' works, Getty Images and AP breached their obligations under their agreements with Plaintiffs.

225.    Plaintiffs' agreements with Getty Images and AP also required each agency to report all transactions related to their photos on a periodic royalty statement. Getty Images and AP breached this obligation by failing to track or monitor the NFL's use of Plaintiffs' photos and failing to report to Plaintiffs any purported "licenses" granted to NFL.

226.    Plaintiffs seek all damages recoverable against Getty Images and AP under New York law.

## COUNT VI:    BREACH OF FIDUCIARY DUTIES
## AGAINST GETTY IMAGES & ASSOCIATED PRESS

227.    Plaintiffs repeat and re-allege each of the above allegations as if set forth fully herein.

228.    Plaintiffs entered into contributor agreements with both Getty Images and AP for the express purpose of having Getty Images and AP sell licenses related to Plaintiffs' photographs in order to earn royalty revenues.

229.    Plaintiffs' contributor agreements with Getty Images expressly provided that Plaintiffs were permitted to select the licensing model of their photos at the time of submission.

230.    Plaintiffs' contributor agreements with Getty Images expressly provided that Plaintiffs were permitted to specify any other restrictions on the licensing of any photos at the time of submission and that Getty Images would honor such restrictions.

231.    Plaintiffs' contributor agreements and course of dealing with AP also established that Plaintiffs could submit their photos as rights-managed images and, in doing so, select and control the manner in which AP would market and license their photos.

232.    In addition, Getty Images routinely holds itself out as an agent for its contributing photographers, including by claiming to third parties that it is entitled to pursue and settle unlicensed uses, license violations, and other copyright infringements related to its contributors' photos.

233.    AP similarly held itself out as Plaintiffs' agents when it entered into the 2012 agreement with the NFL and purported to grant the NFL a retroactive license that would release the NFL from liability for prior unlicensed uses of Plaintiffs' photos.

234.    AP has repeated its claim that it is entitled to pursue and settle infringement claims on Plaintiffs' behalf in its filings in this action.

235.    By doing so, AP held itself out as Plaintiffs' agent and thus was required in such dealings to act as a fiduciary for Plaintiffs.

236.    To the extent that Getty Images and AP claim that they are entitled to bring and settle copyright claims on behalf of Plaintiffs or any other contributors, then Getty Images and AP either must claim such authority as co-owners of the underlying copyrights or as agents for the copyright owners.

237.    Getty Images and AP cannot simultaneously claim to have authority to act on behalf of copyright owners with respect to their exclusive rights under Section 501 of the Copyright Act and yet disclaim any obligations to deal with the copyright owners fairly and honestly and not to engage in undisclosed self-dealing.

238.    Although AP and Getty Images have gone to great lengths to artfully craft the language of their contributor agreements, the actual dealings between Getty Images and AP and Plaintiffs have all the indicia of a principal-agent relationship, or the functional equivalent thereto, and thus Getty Images and AP each owed certain fiduciary duties and responsibilities to Plaintiffs.

239.    Despite holding themselves out as Plaintiffs' agents, Getty Images and AP failed to deal with Plaintiffs fairly and engaged in undisclosed self-dealing.

240.    Getty Images and AP each breached its fiduciary obligations to Plaintiffs through the acts, omissions, and misconduct detailed herein.

241.    Getty Images and AP breached their fiduciary obligations by failing to track and monitor the NFL's use of their photos and failing to charge the NFL appropriate licensing fees for using Plaintiffs' photos.

242.    AP also breached its fiduciary obligations by attempting or purporting to release or extinguish Plaintiffs' copyright claims against the NFL, particularly by doing so without any compensation for Plaintiffs.

243.    Even if AP had authority to negotiate a settlement of Plaintiffs' claims against the NFL, AP's own business dealings with the NFL created an intractable conflict of interest and thus AP should have refrained from exercising such authority or should have informed Plaintiffs of the conflict and included them in its negotiations with the NFL.

244.    Getty Images and AP also breached their fiduciary obligations by refusing Plaintiffs' repeated demand for information regarding which photos the NFL had downloaded from each agency's website and other systems.

245.    Getty Images and AP refused to provide this information to Plaintiffs in order to conceal their misconduct and protect the NFL Defendants.

246.    Plaintiffs seek all damages recoverable against Getty Images AP under New York and/or common law, including punitive damages.

**COUNT VII:   UNJUST ENRICHMENT
AGAINST ALL DEFENDANTS**

247.    Plaintiffs repeat and re-allege each of the above allegations as if set forth fully herein.

248.    In the alternative to their copyright claims, Plaintiffs allege that the foregoing acts by Defendants constitute unjust enrichment under New York and/or the common law.

249.    Even if the Defendants' use of Plaintiffs' photos was not infringing, each of the Defendants was unjustly enriched by the uncompensated use of Plaintiffs' photos.

250.     In each case identified in Exhibits 8-14, Defendants used Plaintiffs' photos without paying any license fees, royalties, or other compensation to Plaintiffs.

251.     Each of the Defendants has profited and otherwise been enriched by their use of Plaintiffs' photos, and such uncompensated or "non-royalty bearing" use of Plaintiffs' photos has been at Plaintiffs' expense.

252.     Among other things, Plaintiffs have lost significant licensing revenue justly due to them from the NFL Defendants' uses of their photos.

253.     Plaintiffs also have been deprived of appropriate credit and attribution for their works and the benefits to their reputation and future licensing opportunities that would follow therefrom.

254.     As described herein, Defendants have been unjustly enriched by obtaining significant revenue from the use of Plaintiffs' photos and did so at the expense of Plaintiffs.

255.     Under New York law and common law principles, Plaintiffs seek a full disgorgement of all of monies that Defendants have obtained or derived from their uncompensated uses of Plaintiffs' photos for promotional or commercial purposes.


**WHEREFORE,** Plaintiffs respectfully pray for judgment on their behalf and for the following relief:

1.     A preliminary and permanent injunction against the NFL Defendants and Replay Photos from copying, displaying, distributing, and/or selling Plaintiffs' works or any publications or other materials that include Plaintiffs' works, and requiring the NFL Defendants and Reply Photos to deliver to the Court for destruction or other appropriate disposition all relevant materials, including digital files of Plaintiffs' photographs and all copies of any infringing

materials that included Plaintiffs' works that are in the control or possession or custody of the NFL Defendants or Replay Photos;

2.     From all NFL Defendants, Getty Images, and AP, all allowable damages under the Sherman Act, including treble damages and attorneys' fees and costs;

3.     From all Defendants, all allowable damages under the Copyright Act, including, but not limited to, statutory or actual damages, including damages incurred as a result of Plaintiffs' loss of licensing revenue and Defendants' profits attributable to the infringements of Plaintiffs' rights;

4.     All allowable damages caused by and/or resulting from Getty Images' and AP's breaches of contract and/or violations of their fiduciary obligations, including actual damages and punitive damages if available;

5.     All damages allowed under New York law and/or common law principles due to Defendants' unjust enrichment, including a full disgorgement of all of monies that Defendants have obtained or derived from their uncompensated uses of Plaintiffs' photos;

6.     Plaintiffs' full costs, including litigation expenses, expert witness fees, interest, and any other amounts authorized under law, and attorneys' fees incurred in pursuing and litigating this matter;

7.     Any other relief authorized by law, including statutory, punitive, and/or exemplary damages; and

8.     For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Dated: February 12, 2014
       New York, New York.

                              Respectfully submitted,

                              NELSON & McCULLOCH LLP


                    By:   _____

                              Danial A. Nelson (DN4940)
                              Kevin P. McCulloch (KM0530)
                              NELSON & McCULLOCH LLP
                              155 East 56th Street
                              New York, New York 10022
                              T: (212) 355-6050
                              F: (646) 308-1178
                              dnelson@nelsonmcculloch.com
                              kmcculloch@nelsonmcculloch.com

                              *Attorneys for Plaintiffs*