UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                      :

PAUL SPINELLI; SCOTT BOEHM; PAUL      :
JASIENSKI; GEORGE NEWMAN LOWRANCE; DAVID :
STLUKA; DAVID DRAPKIN; and THOMAS E. WITTE,

                                    :

                  *Plaintiffs*,        :

                                    :

                 -against-        :

                                    :

NATIONAL FOOTBALL LEAGUE; NFL PROPERTIES, :
LLC; NFL VENTURES, L.P.; NFL PRODUCTIONS, :
LLC; NFL ENTERPRISES, LLC; REPLAY PHOTOS, :
LLC; GETTY IMAGES (US), INC.; ASSOCIATED :
PRESS; ARIZONA CARDINALS HOLDINGS, INC., :
ATLANTA FALCONS FOOTBALL CLUB LLC, :
BALTIMORE RAVENS LIMITED PARTNERSHIP,    **ECF CASE**
BUFFALO BILLS, INC., PANTHERS FOOTBALL LLC, :
CHICAGO BEARS FOOTBALL CLUB, INC., :
CINCINNATI BENGALS, INC., CLEVELAND BROWNS :   13 Civ. 7398 (RWS)
LLC, DALLAS COWBOYS FOOTBALL CLUB, LTD., :
DENVER BRONCOS FOOTBALL CLUB, DETROIT :
LIONS, INC., GREEN BAY PACKERS, INC., HOUSTON :
NFL HOLDINGS LP, INDIANAPOLIS COLTS, INC., :
JACKSONVILLE JAGUARS LTD., KANSAS CITY :
CHIEFS FOOTBALL CLUB, INC., MIAMI DOLPHINS, :
LTD., MINNESOTA VIKINGS FOOTBALL CLUB LLC, :
NEW ENGLAND PATRIOTS, LP, NEW ORLEANS :
LOUISIANA SAINTS, LLC, NEW YORK FOOTBALL :
GIANTS, INC., NEW YORK JETS FOOTBALL CLUB, :
INC., OAKLAND RAIDERS LP, PHILADELPHIA :
EAGLES FOOTBALL CLUB, INC., PITTSBURGH :
STEELERS SPORTS, INC., SAN DIEGO CHARGERS :
FOOTBALL CO., SAN FRANCISCO FORTY NINERS :
LTD., FOOTBALL NORTHWEST LLC, THE RAMS :
FOOTBALL CO. LLC, BUCCANEERS LIMITED :
PARTNERSHIP, TENNESSEE FOOTBALL, INC., and :
WASHINGTON FOOTBALL INC., :

                                    :

                  *Defendants*.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANT THE ASSOCIATED PRESS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT**

Dated: New York, New York   DLA PIPER LLP (US)
   August 12, 2014    1251 Avenue of the Americas
            New York, New York 10020
            (212) 335-4500

Of Counsel:         *Attorneys for Defendant The Associated Press*

Andrew L. Deutsch
Tamar Y. Duvdevani
Paolo Morante
Marc E. Miller

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................................. 1

I     THE FAC FAILS TO STATE A CLAIM AGAINST AP ........................................ 1

     A.     Plaintiffs Fail To Clear The Twombly/Iqbal Pleading Threshold ........................ 1

     B.     The Court Can Consider The NFL and Replay Agreements On This
Motion to Dismiss .................................................................................... 2

     C.     Plaintiffs' New Duress and Unconscionability Arguments Fail ........................... 4

     D.     Plaintiffs Do Not State Plausible Direct or Secondary Copyright
Infringement Claims Against AP .......................................................... 7

     E.     The Court Should Reject Plaintiffs' Argument Based on the Implied
Covenant of Good Faith and Fair Dealing ............................................ 9

     F.     It Is Irrelevant that the Contributor Agreements Do Not Expressly State
That AP Has a Right to Issue Non-Royalty-Bearing Sublicenses ...................... 10

     G.     Plaintiffs' License Grant Permits AP to Grant Retroactive Sublicenses to
the NFL Entities ................................................................................ 13

     H.     The Contributor Agreements Are Not Ambiguous ............................................. 14

     I.     AP's Agreement To Pay Royalties To Plaintiffs Is A Covenant, Not A
Condition To The License ................................................................... 15

     J.     AP's Motion Addresses Plaintiffs' Claim of Contributory Infringement
Relating to Replay ............................................................................. 16

     K.     Plaintiffs' Breach of Contract Claim Fails ......................................................... 16

     L.     Plaintiffs' Unjust Enrichment Claim Fails ......................................................... 19

     M.     Plaintiffs' Antitrust Claim Against AP Must be Dismissed with Prejudice ........ 19

CONCLUSION ............................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abha Int'l, LLC v. Clover Int'l Corp.*,
  11 Civ. 6841, 2012 WL 569187 (S.D.N.Y. Feb. 16, 2012) ....................................................17

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
  944 F.2d 971 (2d Cir. 1991)....................................................................................................14

*Abrams v. Two Wheel Corp.*,
  71 N.Y.2d 693, 530 N.Y.S.2d 46 (1988) .................................................................................6

*American Needle, Inc. v. NFL*,
  560 U.S. 183 (2010)...........................................................................................................21, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................................1, 2

*Batiste v. Island Records, Inc.*,
  179 F.3d 217 (5th Cir. 1999) .................................................................................................12

*Bell Atl Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................1, 2

*Bill Diodato Photography LLC v. Avon Products, Inc.*,
  12 Civ. 847 (RWS), 2012 WL 4335164 (S.D.N.Y. Sep. 21, 2012)..........................................4

*Bolt Elec., Inc. v. City of New York*,
  223 F.3d 146 (2d Cir. 2000)....................................................................................................11

*Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*,
  145 F.3d 481 (2d Cir. 1998)..............................................................................................11, 12

*Chelsea Piers L.P. v. Hudson River Park Trust*,
  106 A.D.3d 410, 964 N.Y.S.2d 147 (1st Dep't 2013) ...........................................................17

*Chesapeake Energy Corporation v. Bank Of New York Mellon*
  *Trust Company, N.A.*,
  957 F. Supp. 2d 316 (S.D.N.Y. 2013).......................................................................................7

*Connolly v. Havens*,
  763 F. Supp. 6 (S.D.N.Y. 1991).................................................................................................2

*Cont'l Airlines, Inc. v. Lelakis*,
  943 F. Supp. 300 (S.D.N.Y. 1996) ...........................................................................................5

*Dang v. San Francisco Forty-Niners,*
   964 F. Supp. 2d 1097 (N.D. Cal. 2013) ....................................................................21, 22

*Davis v. Blige,*
   505 F.3d 90 (2d Cir. 2007).....................................................................................13, 14

*DiFolco v. MSNBC Cable* LLC,
   622 F.3d 104 (2d Cir. 2010)........................................................................................3, 4

*Fox v. Idea Sphere, Inc.,*
   12 Civ. 1342, 2013 WL 1191743 (Mar. 21, 2014) .....................................................4

*Gentieu v. Tony Stone Images/Chicago, Inc.,*
   255 F. Supp. 2d 838 (N.D. Ill. 2003) .........................................................................12

*Graham v. James,*
   144 F.3d 229 (2d Cir. 1998)..............................................................................8, 14, 15

*HarperCollins Publishers LLC v. Open Road Integrated Media, LLP,*
   11 Civ. 9499 (NRB), 2014 WL 1013838 (S.D.N.Y. Mar. 14, 2014) ......................11

*Harris v. Mills,*
   572 F.3d 66 (2d Cir. 2009)............................................................................................2

*Harris v. Provident Life & Accident Ins. Co.,*
   310 F.3d 73 (2d Cir. 2002)..........................................................................................10

*In re Med. X-Ray Film Antitrust Litig.,*
   946 F. Supp. 209 (E.D.N.Y. 1996) ...............................................................................4

*In re Pennsylvania Whiskey Distrib. Corp.,*
   256 A.D. 781, 11 N.Y.S.2d 718 (1st Dep't 1939), *aff'd mem.,* 282 N.Y. 665 (1940).............19

*Ingeniera y Representaciones Internacionales, S.A. v. Stone & Webster International
   Projects Corp.,*
   96 Civ. 7335 (PKL), 1997 WL 529015 (S.D.N.Y., Aug. 25, 1997)...........................2

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.,*
   309 F.3d 76 (2d Cir. 2002)............................................................................................7

*Kamerman v. Steinberg,*
   891 F.2d 424 (2d Cir. 1989).........................................................................................5

*Latour v. Columbia University,*
   12 Civ. 9209, 2014 WL 1327514 (S.D.N.Y. Mar. 31, 2014) ....................................15

*Leutwyler v. Royal Hashemite Court of Jordan,*
   184 F. Supp. 2d 303 (S.D.N.Y. 2001)........................................................................11

*MAI Photo News Agency, Inc. v. American Broadcasting Co., Inc.*,
    97 Civ. 8908, 2001 WL 180020 (S.D.N.Y. Feb. 22, 2001) ..................................................... 11

*Mangiafico v. Blumenthal*,
    471 F.3d 391 (2d Cir. 2006) ....................................................................................................... 4

*Matsumura v. Benihana Nat'l Corp.*,
    465 Fed. Appx. 23 (2d Cir. 2012) ............................................................................................ 10

*Pallonetti v. Liberty Mutual*,
    10 Civ. 4487, 2011 WL 519407 (S.D.N.Y. Feb. 11, 2011) ................................................ 5, 6

*Primex Int'l Corp. v. Wal–Mart Stores, Inc.*,
    89 N.Y.2d 594, 657 N.Y.S.2d 385 (1997) ............................................................................. 18

*Rahman v. Shiv Darshan, Inc.*,
    12 Civ. 3457, 2013 WL 654189 (E.D.N.Y. Feb 22, 2013) ...................................................... 4

*Reddy v. Carpal Holdings Ltd.*,
    09 Civ. 4951, 2010 WL 1379844 (S.D.N.Y. 2010) ................................................................. 5

*Ritani, LLC v. Aghjayan*,
    970 F. Supp. 2d 232 (S.D.N.Y. 2013) ...................................................................................... 7

*S.O.S., Inc. v. Payday, Inc.*,
    886 F.2d 1081 (9th Cir. 1989) ................................................................................................ 10

*Scott v. Palermo*,
    233 A.D.2d 869, 649 N.Y.S.2d 289 (4th Dep't 1996) .............................................................. 6

*SEC v. Gruss*,
    859 F. Supp. 2d 653 (S.D.N.Y. 2012) ...................................................................................... 3

*Silverstein v. Fox Entm't Group Inc.*,
    424 F. Supp. 2d 616 (S.D.N.Y. 2004) .................................................................................... 13

*Simar Holding Corp. v. GSC*,
    87 A.D.3d 688, 928 N.Y.S.2d 592 (2d Dep't 2011) ................................................................. 6

*Skor–Mor Prod., Inc. v. Sears, Roebuck & Co.*,
    81 Civ. 1286, 1982 WL 1264 ................................................................................................. 14

*State v. Avco Fin. Serv. of New York Inc.*,
    50 N.Y.2d 383, 429 N.Y.S.2d 181 (1980) ............................................................................... 6

*Teitelbaum Holdings, Ltd. v. Gold*,
    48 N.Y.2d 51 (1979) ............................................................................................................... 17

*U.S. Naval Inst. v. Charter Commc'ns, Inc.,*
    936 F.2d 692 (2d Cir. 1991)............................................................................8

*United Resource Recovery Corp. v. Ramko Venture Management, Inc.,*
    584 F. Supp. 2d 645 (S.D.N.Y. 2008).......................................................17

*Usov v. Lazar,*
    13 Civ. 818, 2013 WL 3199652 (S.D.N.Y. June 25, 2013)....................10

*Verzani v. Costco Wholesale Corp.,*
    641 F. Supp. 2d 291 (S.D.N.Y. 2009)..........................................................4

*W.W.W. Assocs., Inc. v. Giancontieri,*
    77 N.Y.2d 157, 565 N.Y.S.2d 440 (1990) ................................................11

*Wilcox v. Wilcox,*
    233 A.D.2d 565, 649 N.Y.S.2d 222 (3d Dep't 1996)............................19

*Wu v. Pearson Educ. Inc.,*
    10 Civ. 6537 (KBF), 2013 WL 145666 (S.D.N.Y. Jan. 11, 2013) ............11, 13, 14

## STATUTES

Federal Rule of Civil Procedure 12(b)(6) ......................................................1

Federal Rule of Civil Procedure 9 ................................................................7

## OTHER AUTHORITIES

David Nimmer, *Nimmer on Copyright*
    § 10.15[A][5], at 10-121-22........................................................................15

Defendant The Associated Press ("AP") respectfully submits this reply memorandum of law in further support of its motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the claims against AP asserted in the First Amended Complaint (the "FAC") of plaintiffs Paul Spinelli, Scott Boehm, Paul Jasienski, George Newman Lowrance, David Stluka, David Drapkin, and Thomas E. Witte (collectively, "plaintiffs").

## ARGUMENT

## I. THE FAC FAILS TO STATE A CLAIM AGAINST AP

### A.      Plaintiffs Fail To Clear The *Twombly/Iqbal* Pleading Threshold

AP's opening brief pointed out that under principles established in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), plaintiffs' FAC must be dismissed unless it pleads sufficient facts to make out plausible claims against AP.  AP showed that plaintiffs failed to clear this pleading threshold, and that their assertions of tortious conduct by AP were bald conclusions.  The documents integral to the FAC – in particular the plaintiffs' Contributor Agreements with AP – establish that plaintiffs granted AP broad license and sublicense rights in their Photos, and authorized AP to issue the sublicenses to the NFL Entities and to Replay that are the subject of this lawsuit.  AP showed that to the extent the allegations of the FAC conflict with the plain letter of the Contributor Agreements, the written documents prevail and the FAC must be disregarded.  (AP Br. at 14-19.)

Plaintiffs employ several ineffective tactics to shield their complaint from dismissal. First, they have submitted declarations from plaintiffs Spinelli and Boehm, which essentially reassert the factual allegations of the FAC.  The declarants claim that AP made promises to the plaintiffs, and made admissions that AP's right to license and sublicense is not as broad as appears from the face of the Contributor Agreements.  However, these declarations are

inadmissible on this motion, because the declarants' assertions of fact are "parol evidence presented to vary or contradict the express and unambiguous terms" of the Contributor Agreements. *Ingeniera y Representaciones Internacionales, S.A. v. Stone & Webster International Projects Corp.*, 96 Civ. 7335 (PKL), 1997 WL 529015, at *4 (S.D.N.Y., Aug. 25, 1997). Moreover, the declarations must be disregarded because they seek to add factual assertions not alleged in the FAC. "It is a basic principle that a complaint may not be amended by the plaintiff's brief filed in opposition to a motion to dismiss." *Connolly v. Havens*, 763 F. Supp. 6, 8 n.2 (S.D.N.Y. 1991).

Second, while plaintiffs pay lip service to the *Twombly/Iqbal* pleading standard, they also argue that their FAC must be given a "liberal" construction, and their legal conclusions must be treated as facts. (Pl. Br. at 13.) But, as *Twombly* and *Iqbal* hold, a claim cannot survive dismissal because it is merely conceivable or is founded on legal conclusions rather than facts making out a plausible cause of action. The only claims that are given a "liberal" construction are those filed by *pro se* parties. *See, e.g., Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009). Yet even *pro se* complaints must contain sufficient factual allegations to cross the plausibility threshold. *Id*. None of plaintiffs' claims are plausible under the *Twombly/Iqbal* standard.

**B.      The Court Can Consider The NFL and Replay Agreements On This Motion to Dismiss.**

AP's motion papers asked the court to consider AP's Contributor Agreements with the individual plaintiffs, AP's license agreements with NFLP, and AP's agreement with Replay. Plaintiffs conceded that the Court may consider their Contributor Agreements with AP. (Pl. Br. at 14-15.) However, they argue that the Court should not consider AP's agreements with the NFL Entities and Replay on this motion because plaintiffs are not parties to these agreements, had no possession of these agreements "prior to suit," and had no "direct knowledge of the actual

terms of these agreements." (Pl. Br. at 15.) Plaintiffs add that "there can be no serious dispute" that they did not have access to these agreements and thus "could not have possibly relied on the terms of these documents in drafting their pleadings." (*Id.*)

Plaintiffs conveniently forget that AP's motion to dismiss is addressed to the First Amended Complaint, not the original Complaint. Before filing the FAC, plaintiffs did have full access to the AP-NFLP and AP-Replay agreements and had direct knowledge of their terms. Plaintiffs filed their original Complaint on October 21, 2013. On December 18, 2013, AP moved to dismiss the original Complaint. True copies of the NFLP and AP agreements were attached as Exhibits A-D to the Declaration of Andrew L. Deutsch (Dkt. No. 28), and served on counsel for plaintiffs. Copies were also attached to the NFL Defendants and Replay motions to dismiss.

Plaintiffs elected not to oppose any of defendants' motions to dismiss. Instead, plaintiffs filed and served their FAC on February 12, 2014, almost *two months after* they obtained access to the AP-NFLP and AP-Replay agreements. (Dkt. No. 42). Thus, plaintiffs' claim that they did not have access to these documents prior to filing the FAC is demonstrably false.[1]

The Court thus should consider the AP-NLFP and AP-Replay agreements on this motion. Plaintiffs do not challenge the authenticity or accuracy of the copies of the agreements attached to AP's motion papers, nor contest the documents' relevancy. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). In fact, their own FAC refers to and relies on these agreements. (*See, e.g.,* FAC ¶¶ 20, 26, 27, 28, 38, 54, 79, 92, 116, 136, 138, 139, 140, 141, 157, 166, 175, 181.) A court may consider a document on a motion to dismiss, even if not incorporated by reference in a complaint, "where the complaint 'relies heavily upon its terms and

---

[1]    Even a document which the plaintiff does not possess may be considered on a motion to dismiss where the plaintiff knew of and relied on the document when bringing suit. *SEC v. Gruss*, 859 F. Supp. 2d 653, 657 n.1 (S.D.N.Y. 2012) (Sweet, J.).

effect,' thereby rendering the document 'integral' to the complaint." *DiFolco*, 622 F.3d at 111, quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *see also Bill Diodato Photography LLC v. Avon Products, Inc.,* 12 Civ. 847 (RWS), 2012 WL 4335164, at *3 (S.D.N.Y. Sep. 21, 2012).  The sublicense agreements in this case are unquestionably integral to the plaintiffs' claims.[2]

### C.    Plaintiffs' New Duress and Unconscionability Arguments Fail

Plaintiffs next contend that the Contributor Agreements between AP and the plaintiffs were obtained through "duress" or are "unconscionable," and that the Court should hold an evidentiary hearing before considering those agreements.  (Pl. Br. at 16-19.)  Plaintiffs' position is without merit.

Plaintiffs did not raise duress or unconscionability in their FAC; as a result, they may not raise those issues in opposition to dismissal.  *Fox v. Idea Sphere, Inc.*, 12 Civ. 1342, 2013 WL 1191743, at *28 (Mar. 21, 2014) (dismissing claims of unconscionability raised "for first time in [plaintiff's] opposition to [defendant's] motion to dismiss" and where "the Amended Verified Complaint contains no allegations of unconscionability.")  Moreover, plaintiffs' new position is contradicted by their own FAC, which asserts that AP breached the Contributor Agreements, and seeks damages for those alleged breaches.  (FAC ¶¶ 219-226.).  The premise of plaintiffs' breach of contract claim is that the Contributor Agreements *are* legally valid and enforceable.  *See Verzani v. Costco Wholesale Corp.,* 641 F. Supp. 2d 291, 298 (S.D.N.Y. 2009) (first element of a breach of contract claim is the existence of a "valid, enforceable contract").

---

[2]    The cases cited by plaintiff for a contrary view (Pl. Br. 15-16) are entirely off point. *Rahman v. Shiv Darshan, Inc.*, 12 Civ. 3457, 2013 WL 654189, at *2 (E.D.N.Y.  Feb 22, 2013) dealt with documents "that are neither referenced nor relied upon in the Complaint," and to which the plaintiff did not have access before filing a complaint.  *In re Med. X-Ray Film Antitrust Litig.*, 946 F. Supp. 209, 214 (E.D.N.Y. 1996) did not involve documents relied on in a complaint, but whether the court should consider documents disclosed during discovery on a motion to dismiss.

Even had plaintiffs asserted duress and unconscionability in the FAC, those claims would be immediately subject to dismissal without an evidentiary hearing.  To sustain a claim of economic duress under New York law, a plaintiff must prove that there was (1) a threat; (2) which was unlawfully made; and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative.  *Reddy v. Carpal Holdings Ltd.*, 09 Civ. 4951, 2010 WL 1379844, at *3 (S.D.N.Y. 2010) (quoting *Kamerman v. Steinberg*, 891 F.2d 424, 431 (2d Cir. 1989)).  However, "'[t]he mere existence of economic pressure does not constitute duress.'"  *Id.* (quoting *Cont'l Airlines, Inc. v. Lelakis*, 943 F. Supp. 300, 307 (S.D.N.Y. 1996)).

Importantly, the person claiming duress or unconscionability "'must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so.'"  *Reddy,* 2010 WL 1378944 at *3.  A party waives claims that a contract was compelled by duress or is unconscionable if it accepts the benefits of the contract and does not return them, remains silent for an extended period of time, or continues to perform its obligations under the contract after becoming aware of the alleged duress or unconscionability.  Delays in asserting duress or unconscionability as "short as six months" will forfeit such a claim.  *Id*; *see also Pallonetti v. Liberty Mutual*, 10 Civ. 4487, 2011 WL 519407, at *6 (S.D.N.Y. Feb. 11, 2011) (Sweet, J.).

Plaintiffs do not deny that they entered into the Contributor Agreements, that they have performed under the Agreements for three to almost five years (depending on the plaintiffs) , and that they have never taken any steps to terminate the contracts.[3]  They also do not deny that they

---

[3]   Plaintiffs contend that the "right to terminate" the Contributor Agreement is "nearly meaningless" because AP is not immediately obligated to remove Final Photos from licensing AP Images.  (Pl. Br. at 18 n.7.)  But the law is clear: a party that seeks to be relieved from a contract on duress or unconscionability grounds *must* first repudiate that contract.  Plaintiffs have done the exact opposite: they have affirmed the agreements, accepted and retained payment

have received and retained the compensation paid to them under the contracts.  (See, e.g., FAC ¶¶ 64-68; 81-91; 221-226.).  They have therefore forfeited any argument that their agreements are the subject of duress or are unconscionable.[4]

Even if plaintiffs were not procedurally barred from asserting duress or unconscionability, they would not be entitled to an evidentiary hearing.  The decisions they cite are of no help to them.  For example, no evidentiary hearing was ordered in *State v. Avco Fin. Serv. of New York Inc*., 50 N.Y.2d 383, 389, 429 N.Y.S.2d 181 (1980) (cited at Pl. Br. at 18), where the New York Attorney General brought a special proceeding under the Executive Law to enjoin use of a security clause in a loan agreement form.  *Id*. at 386.  Although the Appellate Division invalidated the clause as "unconscionable," the New York Court of Appeals reversed and dismissed the petition, holding that the clause was not illegal and that the unconscionability issue should not have been considered since it was not raised in the trial court.  Moreover, "[t]he determination of unconscionability is a matter of law for the court to decide.'"  *Simar Holding Corp. v. GSC,* 87 A.D.3d 688, 690, 928 N.Y.S.2d 592 (2d Dep't 2011) (citation omitted).  "Where the significant facts germane to the unconscionability issue are essentially undisputed, the court may determine the issue without a hearing."  *Scott v. Palermo,* 233 A.D.2d 869, 872, 649 N.Y.S.2d 289, 291 (4th Dep't 1996).

Here, there are no disputes as to the germane facts, and plaintiffs have not raised, either

---

under those agreements, and now sue AP for breach of contract.  These facts make the Contributor Agreements valid and enforceable against plaintiffs.  *See Pallonetti*, 2011 WL 519407, at *5.

[4]     Plaintiffs' discussion of the distinction between procedural and substantive unconscionability (Pl. Br. at 16-18) is therefore irrelevant.  So is their reliance on cases involving arbitration clauses in contracts of adhesion and a case having nothing to do with enforcement of a contract, but involving an action by the New York Attorney General under a state statute barring charging "unconscionably excessive prices" after hurricanes and other emergencies. (*Abrams v. Two Wheel Corp.*, 71 N.Y.2d 693, 530 N.Y.S.2d 46 (1988)).

in their FAC or brief, any triable issue as to unconscionability or duress.  Accordingly, they are not entitled to any hearing before the Court considers the Contributor Agreements on AP's motion to dismiss.[5]

### D.    Plaintiffs Do Not State Plausible Direct or Secondary Copyright Infringement Claims Against AP

Plaintiffs assert that they have stated plausible claims for copyright infringement because (1) they own valid copyrights to the Photos at issue; and (2) AP "'exceeded the scope' of the limited rights granted to it under the AP Contributor Agreement and thereby infringed Plaintiffs' copyrights."  (Pl. Br. at 21.)  This assertion of infringement is implausible, in light of the Contributor Agreements and the AP-NFLP and AP-Replay agreements.  Contrary to what plaintiffs now assert (Pl. Br. at 21), AP fully contested the plausibility of the copyright claim in its opening brief.  (See AP Br. at 13-19.)

Plaintiffs' assertion that AP "exceeded the scope" of the license it was granted and therefore infringed plaintiffs' copyrights (Pl. Br. at 21) is facially implausible, because plaintiffs' Contributor Agreements granted AP a broad license of their images and the unfettered right to issue an equally broad sublicense to third parties.[6]  (AP Br. at 14-15.)  As a matter of law, a copyright owner who grants an exclusive or nonexclusive license to use a work waives any right to assert an infringement claim against the licensee, or anyone whom the licensee is entitled to

---

[5]     Plaintiffs make a passing assertion that the Contributor Agreements may be invalid due to "fraud."  (Pl. Br. at 18.)  However, their FAC does not allege fraud, their brief does not allege any facts that would support an inference of fraud, and plaintiffs make no effort to meet Fed. R. Civ. P. 9's heightened pleading requirements for fraud.  *Ritani, LLC v. Aghjayan,* 970 F. Supp. 2d 232, 249 (S.D.N.Y. 2013) (Sweet, J.).

[6]     Plaintiffs invoke the doctrine of contra proferentum (Pl. Br. at 22 n. 8), but that doctrine only applies where a contract is ambiguous, and only where there are no other interpretative tools to determine the parties' intent. *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.,* 309 F.3d 76, 88 n. 7 (2d Cir. 2002); *Chesapeake Energy Corporation v. Bank Of New York Mellon Trust Company, N.A.,* 957 F. Supp. 2d 316, 332 (S.D.N.Y. 2013).  The Contributor Agreements are not ambiguous, and their meaning is clear from their text.

sublicense, for acts within the scope of the license or sublicense.  *U.S. Naval Inst. v. Charter Commc'ns, Inc.,* 936 F.2d 692, 695 (2d Cir. 1991); *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998).

Plaintiffs raise two arguments against their own broad license.  First, they note that the Contributor Agreement specifies two instances in which AP is not required to remit royalties on sublicenses: (1) for downloading of browse-quality preview or thumbnail images; and (2) where AP uses Event Photos for its publicity or advertising materials.  They conclude that every other kind of sublicense that AP issues must be royalty-bearing.  (Pl. Br. at 22-23.).

This fundamentally misreads the terms of the Contributor Agreements.  Section 5 of the Contributor Agreements expressly limits AP's duty to pay royalties to "qualifying Event Photo Sales."   This in turn is defined to mean "*only* the a la carte sale of licenses for Event Photos through AP's online database service, currently known as 'AP Images.'  A la carte sales shall mean the sale of licenses for individual photos for which a per-image price is established." (Contributor Agreement § 5.1) (emphasis added).  The Agreements also recognize that AP may offer the Event Photos for a la carte sale at a "bulk rate" which may include the photographs of photographers other than the contributor.  In such a case, to determine royalties, AP is to apportion the cash received on an equal pro-rata basis across all photos included in the a la carte bulk rate.  (*Id.*)  In other words, plaintiffs are entitled to receive royalties only when AP receives revenue from Event Photo Sales, and their royalties represent a share of this revenue.

The two instances plaintiffs raise – thumbnails and AP use of event photos – are contained *within* this Event Photo Sales royalty provision.  Those instances are simply exceptions to AP's obligation to share revenue that it earns from Event Photo Sales.  Thus, AP does not have to share revenue it earns from selling access to thumbnails of plaintiffs' Event

Photos, or earned from AP's own use of the Event Photos in advertising or promotion.  Section 5 says, in sum, that AP must share revenue it earns from sublicensing with plaintiffs, except in certain situations.  The broad rights granted in Section 4 of the Contributor Agreements do not limit AP's ability to issue non-royalty-bearing sublicenses, and such a restriction may not be read in from Section 5, which deals only with AP's obligation to share revenues that it actually earns from sublicenses.

Plaintiffs make the even weaker argument that AP's sublicense to the NFL Entities is an outright transfer of all AP's rights under the Contributor Agreements, and that the Contributor Agreements prohibit AP from making such a transfer.  (Pl. Br. at 24.)  This  is obviously wrong.  AP sublicensed to NFL Entities the right to reproduce and use plaintiffs' Photos.  But this sublicense did not transfer many of AP's obligations and rights under the Contributor Agreements, such as (1) the parties' rights and obligations set forth in Section 2 (Event Coverage); (2) the rights and obligations set forth in Section 3 (Photographs); (3) rights and obligations set forth in Section 5 (Royalties); and (4) AP's right to indemnification set forth in Section 8.

### E.    The Court Should Reject Plaintiffs' Argument Based on the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs argue that the "terms" of the Contributor Agreements "demonstrate that the entire purpose for Plaintiffs to enter these agreements was to earn royalties from AP licensing their photos" and the "covenant of good faith and fair dealing thus precludes AP's self-serving reading of the contracts."  (Pl. Br. at 26.)  Plaintiffs did not plead a breach of an implied covenant of good faith and fair dealing in their FAC (just as they did not plead duress, unconscionability or fraud, but now argue as though they had).  The Court should reject their argument based on that covenant.

While it is true that contracts include an implied covenant of good faith and fair dealing under New York law, a claim for breach of the implied covenant will be dismissed as redundant "'where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.'"  *Usov v. Lazar*, 13 Civ. 818, 2013 WL 3199652, at *6 (S.D.N.Y. June 25, 2013) (Sweet, J.) (citation omitted); *see also Matsumura v. Benihana Nat'l Corp.*, 465 Fed. Appx. 23, 29 (2d Cir. 2012); *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) ("New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.").  Because plaintiffs have already sued for breach of contract, they cannot raise an alleged breach of the implied duty of fair dealing and good faith based on the same contract in either their opposition or their FAC.

### F.    It Is Irrelevant that the Contributor Agreements Do Not Expressly State That AP Has a Right to Issue Non-Royalty-Bearing Sublicenses

Plaintiffs assail AP's "overly broad reading of its license," because, notwithstanding the broad grant of rights in the Contributor Agreements, AP shows no language that "expressly permitted" the issuance of retroactive or non-royalty-bearing sublicenses.  (Pl. Br. at 26-27.).  *S.O.S., Inc. v. Payday, Inc*., 886 F.2d 1081, 1088 (9th Cir. 1989), which plaintiffs cite, does not support this argument.  *S.O.S.* merely states the standard rule that copyright licenses are presumed to "prohibit any use not authorized."  *Id.* at 1087.  No authority holds that each right in a license must be specifically called out to exist, and that a broad grant of rights to the licensee is meaningless.

Copyright licenses are contracts, and as such are interpreted according to the contract law chosen by rules of the applicable forum.  Where, as here, New York law controls, such licenses are interpreted according to well-settled rules.  As recently stated in the licensing case of

*HarperCollins Publishers LLC v. Open Road Integrated Media, LLP*, 11 Civ. 9499 (NRB), 2014 WL 1013838 (S.D.N.Y. Mar. 14, 2014), at *4:

> [W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." *W.W.W. Assocs., Inc.,* 77 N.Y.2d at 162, 565 N.Y.S.2d 440, (1990).  In other words, our "primary objective is to give effect to the intent of the parties as revealed by the language they chose to use. *Bolt Elec., Inc. v. City of New York,* 223 F.3d 146, 150 (2d Cir. 2000).

Copyright licenses are construed according to these neutral principles of contract interpretation.  *See Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.,* 145 F.3d 481, 487 (2d Cir. 1998)  ("*Boosey & Hawkes*"); *Wu v. Pearson Educ. Inc.*, 10 Civ. 6537 (KBF), 2013 WL 145666, at *4 (S.D.N.Y. Jan. 11, 2013); *Leutwyler v. Royal Hashemite Court of Jordan,* 184 F. Supp. 2d 303, 306 (S.D.N.Y. 2001).  In cases where only the scope of the license is at issue, it is the copyright owner's burden to prove that defendant's usage was unauthorized.  *MAI Photo News Agency, Inc. v. American Broadcasting Co., Inc.*, 97 Civ. 8908, 2001 WL 180020, at *4 (S.D.N.Y. Feb. 22, 2001).  The licensor who argues that there should be an exception or deviation from the meaning reasonably conveyed by the language of a license loses, because he or she "should bear the burden of negotiating for language that would express the limitation or deviation." *Boosey & Hawkes*, 145 F.3d at 487.

The grant of rights made by plaintiffs to AP, and AP's right to sublicense these rights to others, is broad and unlimited.  Section 4.2 of the Contributor Agreement states that AP is granted "a perpetual, irrevocable, transferable, worldwide, right and license to reproduce, edit, translate the caption of, prepare derivative works of, publicly perform, publicly display, load into computer memory, cache, store and otherwise use the [NFL-related photos at issue] and *to transfer or sublicense these rights to other entities*."  (emphasis added.)  Retroactive and non-royalty-bearing licenses are not excluded from this grant.  (AP Br. at 15-16.)  If plaintiffs wanted

to exclude retroactive or non-royalty-bearing sublicenses from this grant, it was incumbent on them to negotiate an express exception. *Boosey & Hawkes*, 145 F.2d at 487.

An illustration of this interpretative principle is found in *Gentieu v. Tony Stone Images/Chicago, Inc*., 255 F. Supp. 2d 838 (N.D. Ill. 2003). The plaintiff claimed that Getty Images' licensing of her images exceeded the scope of her contributor agreement with Getty Images, and constituted copyright infringement, breach of contract, and breach of an implied covenant of good faith and fair dealing. *Id.* at 846-47. She complained in particular about such things as Getty giving price discounts for her images. *Id*. at 865. The plaintiff argued, like plaintiffs here, that "when a license is limited in scope, exploitation of the copyrighted work beyond those specified limits constitutes infringement." *Id*. The court rejected this argument because the license in the contributor agreement "was exceptionally broad in scope," "appointed Getty as the 'sole and exclusive agent and representative throughout the world with respect to the license, reproduction, use, sale, or other exploitation' of Gentieu's images that were accepted by Getty" and "granted Getty 'sole discretion regarding setting the terms and conditions of any license, reproduction, use, or other exploitation' for those images." *Id*. at 863-64. The court thus held that Getty's "reporting, pricing and cancellation-related conduct did not exceed the scope of the license." *Id*. at 864.[7]

AP's license from plaintiffs is of equivalent breadth. Because the sublicenses granted by AP to the NFL Entities and Replay fall within the scope of AP's license in the Contributor Agreements, the sublicensees' use of the Photos is not copyright infringement.

---

[7]     *See also Batiste v. Island Records, Inc.,* 179 F.3d 217, 223 (5th Cir. 1999) (broad grant of license in composition gave music publisher/record producer authority to license a use of a digital sample of composition on a nother recording); *Boosey & Hawkes*, 145 F.3d at 485–88 (agreement conveying the right "to record [a composition] in any manner, medium or form" for use "in [a] motion picture" is sufficiently broad to include distribution of the motion picture in laser disc format although "laser disc format" was not expressly mentioned).

G.   **Plaintiffs' License Grant Permits AP to Grant Retroactive Sublicenses to the NFL Entities**

AP's moving papers showed that the broad grant of the plaintiffs' licenses permitted AP to grant a "retroactive sublicense" to the NFL Entities.  (AP Br. at 15-16.)   AP cited *Wu*, 2013 WL 145666, at *4, which held that "[u]nder ordinary circumstances, copyright licenses may be granted either prospectively or retroactively," and declined to "read additional, unstated limits into otherwise clear contracts between sophisticated parties." *Id.* at *5.  *See also Silverstein v. Fox Entm't Group Inc.,* 424 F. Supp. 2d 616, 629 (S.D.N.Y. 2004).  Both *Wu* and AP's opening brief distinguished the Second Circuit's decision in *Davis v. Blige*, 505 F.3d 90, 101-08 (2d Cir. 2007) as inapplicable in the photo sublicensing context.  *Wu*, 2013 WL 145666, at *4; AP Br. at 16-17.

Plaintiffs have responded by ignoring *Wu* and *Silverstein* entirely – they never even mention the decisions.  While plaintiffs do cite *Davis*, they fail to recognize that *Davis* addressed only a limited question that is irrelevant to this case: "whether a copyright co-owner . . . can convey his copyright interest to a third party retroactively, thereby defeating a claim of infringement asserted against that third party by another co-owner."  *Davis*, 505 F.3d at 101.

There are basic differences between *Davis*, on the one hand, and the facts in this case and *Wu*, on the other.  In *Davis*, there was no written agreement between the copyright co-owners. One of the co-owners assigned his interest (including, purportedly, all causes of action for infringement of the copyright) to a person who had been sued for infringement by the other co-owner.  The assignee then claimed that he was immune from the second co-owner's infringement suit.  *Davis* held that the assignment cannot be given retroactive effect to defeat the suing co-owner's vested  infringement claim, because one co-owner has no power to grant an exclusive license or release another co-owner's accrued claims.  *Id.*, 505 F.3d at 103-04.

*Davis*' reasoning about co-copyright owners has no relevance here.  Each plaintiff is the sole owner of the copyright in his Photos; unlike *Davis*, AP's sublicense does not affect the rights of any copyright co-owner.  Each plaintiff granted AP all rights comprised within copyright for the full term of his written Contributor Agreement, and gave AP the right to license others to make any use of the Photo that AP could make.[8]

Plaintiffs thus gave AP the right to grant retroactive sublicenses, just as the plaintiff in *Wu* gave that right to his own photo agencies.  *Wu*, 2013 WL 145666, at *5.  AP was entitled to issue a sublicense after a sublicensee used a Photo, as long as the use was after the effective date of the applicable Contributor Agreement.  Plaintiffs do not allege that NFL Entities and Replay used their Photos before the effective date of their Contributor Agreements, or that their use otherwise exceeded AP's sublicenses.  Those sublicenses are therefore a complete defense to plaintiffs' direct  infringement claim against the NFL Entities and Replay.  *Graham*, 144 F.3d at 236.  Because the NFL Entities and Replay are not direct infringers, AP cannot be held liable for secondary copyright infringement.[9]

### H.    The Contributor Agreements Are Not Ambiguous

Plaintiffs next argue that "at worst," the Contributor Agreements are "ambiguous as to whether AP was permitted to grant 'non-royalty bearing'" licenses to third parties, and that this creates a triable issue of fact that bars dismissal.  (Pl. Br. at 31.)  The argument is unavailing because the broad grant of rights in Section 4.2 is unambiguous.  Nothing in the Contributor

---

[8]     Although the license from plaintiff Lowrance to AP is technically non-exclusive (Lowrance Contributor Agreement § 4.2), this fact does not limit AP's right to issue retroactive licenses in Lowrance's Photos to the full extent of AP's licensed rights.

[9]     *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 944 F.2d 971, 980 (2d Cir. 1991)  and *Skor–Mor Prod., Inc. v. Sears, Roebuck & Co.,* 81 Civ. 1286, 1982 WL 1264, at *3 (S.D.N.Y. May 12, 1982, cited at Pl. Br. at 29, have no relevance to this case.  These decisions hold only that a written assignment of a copyright must expressly convey accrued claims of infringement in order for the assignee to have standing to sue on the claims.

Agreements restricts AP from granting non-royalty bearing sublicenses or retroactive sublicenses.  If plaintiffs wanted to generally restrict AP from issuing sublicenses that did not yield a royalty or prohibit retroactive sublicenses, they could have either limited their grant, or declined to sign the Contributor Agreements because such language was absent.  They did neither, and chose instead to sign the contracts as written.

I.   **AP's Agreement To Pay Royalties To Plaintiffs Is A Covenant, Not A Condition To The License**

AP's moving brief showed that its agreement to pay royalties to plaintiffs for all sales that are royalty-bearing under the Contributor Agreements is a covenant and not a condition to the license.  As a consequence, a failure by AP to pay moneys claimed to be due to plaintiffs for sublicenses may be an arguable breach of the Contributor Agreement, but it cannot be an infringement of copyright.  (AP Br. at 18).  *See Graham*, 144 F.3d at 237, and other cases cited at AP Br. at 18.

Without citing any supporting authority, plaintiffs respond that "[b]ecause the contracts are explicit that the license granted to AP was 'in exchange for' payment of royalties, this clearly 'qualifies' AP's rights and duties and thus the obligation to pay royalties was a condition of the license granted to AP."  This argument has been repeatedly rejected by the federal courts, which hold that once a license agreement is executed, failure to pay consideration due to the licensor, including royalties, is a breach of covenant, not a condition to the license, unless the agreement expressly provides otherwise.  While the licensor may have a claim for contract damages, the license remains intact until rescinded by the licensor.  *See, e.g., Latour v. Columbia University*, 12 Civ. 9209, 2014 WL 1327514, at *2-3 (S.D.N.Y. Mar. 31, 2014);  3 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 10.15[A][5], at 10-121-22, and cases there cited.

Plaintiffs do not claim that they have rescinded their Contributor Agreements.  Because they have sued AP for breach of contract, and because the licenses they have granted to AP are irrevocable, their only remedy is a suit for contract damages.  (AP Br. at 18-19.)  Plaintiffs' copyright infringement claims against AP must therefore be dismissed.

**J.      AP's Motion Addresses Plaintiffs' Claim of Contributory Infringement Relating to Replay**

Plaintiffs assert that "AP's arguments for dismissing Plaintiffs' vicarious and contributory liability claims as well as Plaintiffs' breach of contract claim address only Plaintiffs' allegations regarding the AP's dealings with the NFL Entities, ignoring that such claims also relate to AP's dealings with Replay."  (Pl. Br. at 33.)  This is wrong.  While AP's brief focused on the NFL Entities because the FAC focuses on those defendants, AP unquestionably showed that it was also authorized by plaintiffs to issue the sublicense to Replay.  (*See, e.g.,* AP Br. at 19.)  AP's brief showed that plaintiffs' claim for secondary copyright infringement with respect to Replay also fails, and plaintiffs have provided no argument in response.

**K.      Plaintiffs' Breach of Contract Claim Fails**

Plaintiffs argue that they have adequately plead a breach of contract claim.  They point to the FAC's conclusory allegations that AP was required to license their Photos on a "Rights-Managed" basis, that AP was required to "track and manage the usage rights being granted to end users," and that AP was not permitted to license the photos to anyone for royalty-free uses.  (Pl. Br. at 34.)  Plaintiffs also assert that the Contributor Agreements are ambiguous, and ask the Court to consider an alleged "course of conduct" as evidence of ambiguity.  (Pl. Br. at 34-38.)  Moreover, plaintiffs try to introduce additional or different terms to the contracts through

declarations of plaintiffs Spinelli and Boehm.  (Pl. Br. at 6-8.)   The Court should reject each of these efforts to inject extrinsic evidence.

Because the terms of the Contributor Agreements are not ambiguous, New York law prohibits the introduction of extrinsic evidence to add to or vary those terms.  "Interpretation of an unambiguous contract provision is a function for the court, and matters extrinsic to the agreement may not be considered when the intent of the parties can be gleaned from the face of the instrument."  *Teitelbaum Holdings, Ltd. v. Gold*, 48 N.Y.2d 51, 56 (1979); *see also United Resource Recovery Corp. v. Ramko Venture Management, Inc*., 584 F. Supp. 2d 645, 653 (S.D.N.Y. 2008) (Sweet, J.).

Thus, plaintiffs' allegations and declaration averments regarding "Rights-Managed" licensing, tracking of end user usage rights, and prohibition of free or complimentary use of photos by the NFL Entities must be disregarded.  These supposed terms do not appear in the Contributor Agreements, and are contradictory to the unambiguously broad and unrestricted license and right to sublicense actually granted to AP by the Contributor Agreements.  Plaintiffs also contend that AP's course of performance of the contract creates an ambiguity (Pl. Br. at 35.) However, course of performance is just another form of extrinsic evidence, and may not be considered where the parties' intent is clear from the words they used.  *Chelsea Piers L.P. v. Hudson River Park Trust*, 106 A.D.3d 410, 412, 964 N.Y.S.2d 147, 149 (1st Dep't 2013).

This bar to extrinsic evidence is reinforced by the merger clause in the Contributor Agreements, which states that each Agreement "incorporates the entire understanding of the Parties and supersedes any and all prior agreements, oral or written, relating to Photographer's relationship with AP and is intended as a complete and exclusive statement of the terms of the arrangement between the parties."  (Contributor Agreement § 10.)  *See Abha Int'l, LLC v. Clover*

*Int'l Corp.*, 11 Civ. 6841, 2012 WL 569187, at *3 (S.D.N.Y. Feb. 16, 2012) ("A 'general merger clause' . . . 'precludes extrinsic proof to add to or vary' the terms of the agreement.") (quoting *Primex Int'l Corp. v. Wal–Mart Stores, Inc.*, 89 N.Y.2d 594, 600, 657 N.Y.S.2d 385 (1997)).

Section 5 of the Contributor Agreements requires AP, "in exchange for the license granted in Section 4," to provide a share of revenue earned by AP on "qualifying Event Photo Sales."   "Event Photo Sales" means the "a la carte *sale* of licenses for Event Photos through. . . 'AP Images,'" and "[a] la carte sales means the *sale* of licenses for individual photos for which a per-image price is established." (emphasis added).   AP's moving brief showed that the royalty-free sublicense to the NFL Entities was not  a "sale" of a license under New York law, and therefore did not give plaintiffs any right to receive payment from AP.  (AP Br. at 12.)

Plaintiffs respond with a notably confused argument over the meaning of the term "sale." They assert that AP received consideration from entering into the 2012 Photo Library Agreement with NLFP, which contained, among many other terms, a retroactive grant of a non-royalty-bearing sublicense.  (Pl. Br. at 38.)  That AP received value from entering into the overall contract is undoubtedly true, but it is also entirely irrelevant to the breach of contract claim.[10] The contract claim alleges that AP failed to pay royalties due to plaintiffs.  However, plaintiffs were due royalties only where AP received revenue from the "sale of licenses for individual photos for which a per-image price is established."  AP's entry into its agreement with the NFL Entities was not a revenue-generating "sale of licenses."

---

[10] AP did not receive any payment from the NFL Entities for entering into the 2009 and 2012 Photo Library Agreements.  Those agreements required AP to both pay a yearly guaranteed amount to NFLP and a percentage of AP's net revenues from commercial licenses above this minimum guarantee.  (Dkt. No. 61: Deutsch Decl. Ex. A at 5.)  AP's economic benefit came from retaining a percentage of the revenues it received from licensing NFL-themed photos to end-users.

Plaintiffs attempt to distinguish the New York decisions that AP cited to establish the definition of a "sale" (*Wilcox v. Wilcox*, 233 A.D.2d 565, 566, 649 N.Y.S.2d 222 (3d Dep't 1996); *In re Pennsylvania Whiskey Distrib. Corp.*, 256 A.D. 781, 784, 11 N.Y.S.2d 718, 721 (1st Dep't 1939), *aff'd mem.*, 282 N.Y. 665 (1940)) by noting that these were not copyright decisions.  (Pl. Br. at 37-38).  But this distinction is meaningless.  Both decisions addressed the same question involved here, namely whether a transfer of property rights (in *Wilcox*, real property; in *In re Pennsylvania Whiskey Distrib.*, a barrel of whiskey) for no consideration is a "sale."  In both decisions the Appellate Division held that a sale is defined as transfer of title and/or possession for a consideration.  Here, there was no consideration attributable to the sublicense to the NFL Entities.  The conclusion that AP's sublicense to the NFL Entities was not a "sale of a license" is also consistent with the evident purpose of Section 5 of the Contributor Agreements, which is to have AP share with plaintiffs revenue that AP *actually receives* from licenses of plaintiffs' Photos.  AP received no revenue from its sublicense to the NFL, and therefore was not contractually required to make any payment to the plaintiffs.

### L.     Plaintiffs' Unjust Enrichment Claim Fails

Plaintiffs' unjust enrichment claim fails both because it is preempted by the Copyright Act and because it is duplicative of their breach of contract claim.  (AP Br. at 24-27.)   Plaintiffs assert that this claim should not be dismissed because they pled it "in the alternative" to the copyright claims (Pl. Br. at 40), but cite no authority for such pleading.  The cases cited in AP's opening brief show that an unjust enrichment claim that is duplicative of a suit for breach of an express contract must be dismissed, even if pled in the alternative.   (AP Br. at 27 n.17). Plaintiffs cite no contrary authority and do not distinguish the cases cited by AP.  Likewise, they cite no authority to support their assertion (Pl. Br. at 41) that they can maintain a separate unjust enrichment claim even if all of the uses of their Photos were authorized.

**M.      Plaintiffs' Antitrust Claim Against AP Must be Dismissed with Prejudice**

Plaintiffs' opposition brief ignores AP's separate and independent arguments for dismissing the Sherman Act claim against AP.  They incorrectly assert that AP has merely referred to and incorporated the NFL Defendants' arguments for dismissal of the Sherman Act claim.  (Pl. Br. at 41.)  While the NFL Defendants' arguments do support dismissal of the antitrust claim against AP, AP pointed out in its opening brief that there are two additional separate and independent arguments for dismissal that apply to AP only.  (AP Br. at 28-36.) Plaintiffs do not contest either of these points.

First, plaintiffs have not refuted AP's showing that the 2009 and 2012 license agreements between the NFLP and the AP are garden-variety exclusive licenses, of limited duration and awarded pursuant to an admittedly competitive process, and therefore do not violate the antitrust laws.  (AP Br. at 28-30)  Indeed, as AP showed, the license agreements would be lawful even if Plaintiffs could prove that the NFL Defendants engaged among themselves in an unlawful horizontal conspiracy to manage their intellectual property rights through a single entity.  No discovery is needed on this point, because (1) the FAC itself alleges that AP's exclusive licenses were obtained pursuant to a competitive process (FAC at ¶¶ 26-27, 54, and 88), and (2) the license agreements each have three-year terms.  *See* Deutsch Decl. Ex. A, at 1, and Ex. B, at 1.

Second, AP showed that plaintiffs fail to allege a necessary element of a Sherman Act claim against AP: antitrust injury.  The alleged anticompetitive harm plaintiffs claim stems from an allegedly pre-existing horizontal agreement among the NFL Defendants, and does not flow from the exclusive licenses between the AP and the NFLP.  (AP Br. at 30-36.)  Plaintiffs would have suffered this harm even if the NFLP had not licensed AP, but had dealt directly with the plaintiffs.  (*Id.* at 32-34.)  Plaintiffs' only response is to make the bald assertion that AP was a "co-conspirator" or acted "in concert" with the NFL Defendants.  (Pl. Br. at 29, 40.)  However,

these kind of vague conclusions do not clear the *Twombly/Iqbal* plausibility threshold.  (AP Br. at 34.)

Indeed, plaintiffs' opposition brief merely repeats what was already evident from their FAC:  the only injury they claim arises from an alleged *horizontal* conspiracy among the NFL Defendants.  For example:

- "Plaintiffs allege that *the NFL Defendants* engaged in a scheme to jointly market their independently-owned intellectual property."   (Pl. Br. at 24) (emphasis added).

- "[T]he NFL's effort to restrain trade had clear consequences…".  *Id.*, at 25.

- "As a direct result *of the NFL's monopoly*, however, Plaintiffs were shut out of the market and forced to channel their work through licensing agents." *Id.*, at 25-26 (emphasis added).

- "…the NFL exploited its illegal monopoly to force Plaintiffs' agents 'to grant the NFL unfettered access to Plaintiffs' image libraries…". *Id.*, at 27.

- "…the *NFL's decision* to restrict licensing rights to a single agency…".  *Id.* (emphasis added).

- "…until [Plaintiffs] were shut out of the market *by the NFL's illegal conspiracy.*" *Id.*, at 28.

- "…a circumstance such as this where the initial conspiracy involved *horizontal price fixing.*" *Id.*, at 41 (emphasis added).

The FAC nowhere alleges that the AP had any part in the alleged horizontal agreement.  In fact, it asserts the contrary, as it alleges that there was a similar exclusive license between the NFLP and Getty Images, which preceded the AP's exclusive license by at least two years.  (FAC ¶ 46.)

This case is fundamentally different from the decisions on which plaintiffs primarily rely: *American Needle, Inc. v. NFL*, 560 U.S. 183 (2010) and *Dang v. San Francisco Forty-Niners*, 964 F. Supp. 2d 1097, 1106 (N.D. Cal. 2013).  First, neither the Supreme Court in *American Needle* nor the trial court in *Dang* ruled on the legality of a vertical exclusive license, or determined whether the plaintiffs suffered any antitrust injury from acts of the NFLP's exclusive

licensees. Those decisions thus have no application to the separate grounds for dismissal cited by AP.   Second, in *American Needle* and *Dang*, the plaintiffs alleged that Reebok, the NFLP's exclusive licensee, *induced* the horizontal agreement among the NFL Defendants in order to profit from a resulting exclusive license.[11]  Here, by contrast, plaintiffs allege no facts plausibly suggesting that AP induced the NFL Teams and other NFL entities to engage in a horizontal agreement.   The most they advance is another conclusion devoid of a factual anchor:  that the AP "needed to increase prices to recoup royalties" lost as a result of the NFL Defendants' actions.  (Pl. Br. at 41.)  Again, such assertions fail the *Twombly/Iqbal* test.

The Court should not permit plaintiffs to amend their complaint, because any amended Sherman Act claim would be futile and again subject to dismissal.  Plaintiffs cannot establish antitrust injury from anything AP did, because the only injury they can claim comes from an alleged supposed horizontal agreement among the NFL Defendants, in which AP had no involvement.

AP also adopts and incorporates by reference all arguments for dismissal of the Sherman Act claim contained in the Reply Brief of the NFL Defendants that are applicable to AP.

---

[11] In *American Needle*, Plaintiff claimed that "Reebok agreed to 'provid[e] Clubs greater flexibility in the distribution of the products covered by' the agreement (JA469), by permitting teams to elect to control (and profit from) the merchandising of their own apparel in exchange for an annual minimum contribution to the teams' shared revenue pool….In March 2001, the teams voted to approve a final agreement with Reebok. JA205-07, 469-70.  In light of that agreement, NFLP did not renew its licenses with competing manufacturers. JA265….  After the creation of the new licensing arrangement—and the accompanying elimination of competing licensees in the market for NFL team apparel—the price of NFL team headwear increased.  A Reebok vice-president hailed the elimination of price competition as 'a godsend from a profitability standpoint,' explaining that '[b]asic fitted caps that were selling for $19.99 a few years ago because of the price pressures are now selling for $30.' JA471."  Brief for Petitioner at 7, *American Needle, Inc. v. NFL, et al.*, 560 U.S. 183 (2010) (No. 08-661) (copy attached as Exhibit A to Reply Declaration of Andrew L. Deutsch.)

**CONCLUSION**

For the reasons stated above and in AP's moving papers, the Court should dismiss the

First Amended Complaint as against AP in its entirety, with prejudice.

Dated: New York, New York
      August 12, 2014

                                               **DLA PIPER LLP (US)**

                               By: /s/  Andrew L. Deutsch
                                     Andrew L. Deutsch
                                     Tamar Y. Duvdevani
                                     Paolo Morante
                                     Marc E. Miller
                                     1251 Avenue of the Americas
                                     New York, New York 10020
                                     Tel: (212) 335-4500
                                     Fax: (212) 884-8580

                                     *Attorneys for Defendant*
                                     *The Associated Press*