UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

PAUL SPINELLI, SCOTT BOEHM, PAUL
JASIENSKI, GEORGE NEWMAN LOWRANCE, DAVID
STLUKA, DAVID DRAPKIN, and THOMAS E.
WITTE,

                    Plaintiffs,

        - against -

NATIONAL FOOTBALL LEAGUE, NFL PROPERTIES,
LLC, NFL VENTURES, L.P., NFL PRODUCTIONS,
LLC, NFL ENTERPRISES, LLC, REPLAY PHOTOS,
LLC, GETTY IMAGES (US), INC., ASSOCIATED
PRESS, ARIZONA CARDINALS HOLDINGS, INC.,
ATLANTA FALCONS FOOTBALL CLUB LLC,
BALTIMORE RAVENS LIMITED PARTNERSHIP,
BUFFALO BILLS, INC., PANTHERS FOOTBALL
LLC, CHICAGO BEARS FOOTBALL CLUB, INC.,
CINCINNATI BENGALS, INC., CLEVELAND
BROWNS LLC, DALLAS COWBOYS FOOTBALL CLUB,
DENVER BRONCOS FOOTBALL CLUB, DETROIT
LIONS, INC., GREEN BAY PACKERS, INC.,
HOUSTON NFL HOLDINGS LP, INDIANAPOLIS
COLTS, INC., JACKSONVILLE JAGUARS LTD.,
KANSAS CITY CHIEFS FOOTBALL CLUB, INC.,
MIAMI DOLPHINS, LTD., MINNESOTA VIKINGS
FOOTBALL CLUB LLC, NEW ENGLAND PATRIOTS,
LP, NEW ORLEANS LOUISIANA SAINTS, LLC,
NEW YORK FOOTBALL GIANTS, INC., NEW YORK
JETS FOOTBALL CLUB, INC., OAKLAND RAIDERS
LP, PHILADELPHIA EAGLES FOOTBALL CLUB,
INC., PITTSBURGH STEELERS SPORTS, INC.,
SAN DIEGO CHARGERS FOOTBALL CO., SAN
FRANCISCO FORTY NINERS LTD., FOOTBALL
NORTHWEST LLC, THE RAMS FOOTBALL CO. LLC,
BUCCANEERS LIMITED PARTNERSHIP, TENNESSEE
FOOTBALL, INC., and WASHINGTON FOOTBALL
INC.,

                    Defendants.

----------------------------------------X

13 Civ. 7398 (RWS)

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/15/16

A P P E A R A N C E S:

Attorneys for the Plaintiffs

NELSON & MCCULLOCH LLP
155 East 56th Street
New York, NY 10022
By:  Kevin Patrick McCulloch, Esq.


Attorneys for the Defendants

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
42nd Floor
New York, NY 10036
By:  Jeffrey A. Mishkin, Esq.
     Anthony Joseph Dreyer, Esq.
     Jordan Adam Feirman, Esq.
     Karen Hoffman Lent, Esq.

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
1133 Westchester Avenue
White Plains, NY 10604
By:  Jura Christine Zibas, Esq.
     Jana A. Slavina, Esq.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
25th Floor
New York, NY 10153
By:  Bruce S. Meyer, Esq.

DLA PIPER US LLP
1251 Avenue of the Americas
New York, NY 10020
By:  Andrew Lawrence Deutsch, Esq.
     Marc Evan Miller, Esq.
     Paolo Morante, Esq.
     Tamar Y. Duvdevani, Esq.

**Sweet, D.J.**

There are four motions to dismiss currently pending in this action between plaintiffs Paul Spinelli, Scott Boehm, Paul Jasienski, George Newman Lowrance, David Stluka, David Drapkin, and Thomas E. Witte ("Plaintiffs") and defendants National Football League ("NFL"), NFL Properties, LLC, ("NFLP"), NFL Ventures, L.P., NFL Productions, LLC, NFL Enterprises, LLC (together with NFL, NFLP, NFL Ventures, L.P, and NFL Productions, "NFL Entities"), Arizona Cardinals Holdings, Inc., Atlanta Falcons Football Club LLC, Baltimore Ravens Limited Partnership, Buffalo Bills, Inc., Panthers Football LLC, Chicago Bears Football Club, Inc., Cincinnati Bengals, Inc., Cleveland Browns LLC, Dallas Cowboys Football Club, Denver Broncos Football Club, Detroit Lions, Inc., Green Bay Packers, Inc., Houston NFL Holdings LP, Indianapolis Colts, Inc., Jacksonville Jaguars Ltd., Kansas City Chiefs Football Club, Inc., Miami Dolphins, Ltd., Minnesota Vikings Football Club LLC, New England Patriots, LP, New Orleans Louisiana Saints, LLC, New York Football Giants, Inc., New York Jets Football Club, Inc., Oakland Raiders LP, Philadelphia Eagles Football Club, Inc., Pittsburgh Steelers Sports, Inc., San Diego Chargers Football Co., San Francisco Forty Niners Ltd., Football Northwest LLC, The Rams Football Co. LLC, Buccaneers Limited Partnership,

1

Tennessee Football, Inc., and Washington Football Inc. (Arizona Cardinal Holdings, Inc. through Washington Football Inc., "NFL Clubs," and together with NFL Entities, "NFL Defendants"), Replay Photos, LLC ("Replay"), Getty Images (US), Inc. ("Getty"), and Associated Press ("AP," together with NFL Defendants, Replay, and Getty, "Defendants").

NFL Defendants, Replay and AP have moved to dismiss the second amended complaint (the "SAC"). Getty has moved to dismiss the SAC and compel arbitration, or stay the action as to Getty.

For the reasons set forth below, the NFL Defendants', Replays', and AP's motions to dismiss are granted in part and denied in part, and Getty's motion to compel arbitration is granted. Therefore, the case against Getty is dismissed with leave to renew after the completion of the arbitration.

**Prior Proceedings**

Plaintiffs filed their initial complaint ("Complaint") against the NFL Entities, Replay, Getty, and AP on October 21, 2013. On March 27, 2015, the Court granted Defendants' motions to dismiss and Getty's motion to compel arbitration. On August

17, 2015, the Plaintiffs filed the SAC.  Defendants filed these

four motions to dismiss (and Getty's motion to compel

arbitration) on October 1, 2015.


The instant motions were heard and marked fully

submitted on February 11, 2016.  While the motions to dismiss

were pending, motions to stay discovery were filed by Defendants

and granted by the Court.  (See Dkt. Nos. 135, 136, 145.)


**Facts**


The Court assumes familiarity with facts as

articulated in the Court's March 27, 2015 opinion.  Spinelli et.

al v. National Football League et al., 96 F.Supp.3d 81, 91-98

(S.D.N.Y. 2015).


**Applicable Standard**


On a motion to dismiss pursuant to Rule 12(b)(6), all

factual allegations in the complaint are accepted as true, and

all inferences are drawn in favor of the pleader.  Mills v.

Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).

However, a complaint must contain "sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible

3

on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A claim is facially plausible when "the plaintiff

pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 556 U.S. at 663 (quoting Twombly,

550 U.S. at 556).  In other words, the factual allegations must

"possess enough heft to show that the pleader is entitled to

relief." Twombly, 550 U.S. at 557 (internal quotation marks

omitted).

While "a plaintiff may plead facts alleged upon

information and belief 'where the belief is based on factual

information that makes the inference of culpability plausible,'

such allegations must be 'accompanied by a statement of the

facts upon which the belief is founded.'" Munoz-Nagel v. Guess,

Inc., No. 12-1312, 2013 WL 1809772, *3 (S.D.N.Y. Apr. 30, 2013)

(quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d

Cir. 2010)); Prince v. Madison Square Garden, 427 F. Supp. 2d

372, 384 (S.D.N.Y. 2006); Williams v. Calderoni, No. 11-3020,

2012 WL 691832, *7 (S.D.N.Y. Mar. 1, 2012)).  The pleadings,

however, "must contain something more than . . . a statement of

facts that merely creates a suspicion [of] a legally cognizable

right of action." *Twombly*, 550 U.S. at 555 (citation and internal quotation omitted).

"The law of the case ordinarily forecloses relitigation of issues expressly or impliedly decided by the appellate court." Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 736 F.3d 198, 208 (2d Cir. 2013) (citing United States v. Quintieri, 306 F.3d 1217, 1229 (2d Cir. 2002) (internal quotation marks omitted). Importantly, the doctrine is not binding, though the law of the case "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Ali v. Mukasey, 529 F.3d 478, 490 (2d Cir. 2008) (quoting United States v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000)).

I.  **The Motion To Dismiss is Granted in Part for the Reasons Stated in the Court's Previous Opinion with the Exception of New Allegations Regarding the Breach of Contract Claims**

Defendants argue that the SAC should be dismissed because it is precluded by the law of the case doctrine. While there are policy and efficiency arguments in favor of the law of

5

the case doctrine, it is "admittedly discretionary and does not
limit a court's power to reconsider its own decisions prior to
final judgment."  Virgin Atl. Airways, Ltd. v. Nat'l Mediation
Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

Taking into consideration the discretionary nature of
this doctrine, the Court need not address whether the law of the
case doctrine precludes review of the issues in this Court's
previous decision.  Instead, the Court has considered the
arguments presented by both parties and adopts the reasoning and
conclusions of the Court's March 27, 2015 opinion, with the
exception of the conclusions with respect to unconscionability
and duress.

## II.   **The Motion To Dismiss Plaintiffs' Contract Claims for Unconscionability Is Denied**

The Court denied the Plaintiffs' claims for
unconscionability in the March 27, 2015 opinion because those
claims were not pled in the First Amended Complaint ("FAC") and
were instead presented for the first time in Plaintiffs' motion
to dismiss opposition brief.  96 F.Supp.3d at 132-133.  However,
the Court cautioned that "the facts as alleged by Plaintiffs
tend to show that the precedents relating to broad licensing,

6

combined with the power and capacity of the Defendants, and, by
contrast, apparent relative lack of market power of Plaintiffs,
lead to a difficult result, approaching unfairness, in this
case."  Id. at 133.

The SAC corrects the deficiencies the Court noted from
the FAC and does allege these breach of contract theories in the
SAC.  The remaining issue is whether these allegations are
sufficient to survive a motion to dismiss.  Unconscionability is
adequately pled in the SAC and therefore the motions to dismiss
are denied with respect to that breach of contract theory.

a. Unconscionability Claims Against the Defendants

The purpose of unconscionability is to protect against
a contract that is "so grossly unreasonable or unconscionable in
the light of the mores and business practices of the time and
place as to be unenforcible [sic] according to its literal
terms."  Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10,
534 N.E.2d 824 (1988) (internal citations omitted).  A contract
is unconscionable when there is '"an absence of meaningful
choice on the part of one of the parties together with contract
terms which are unreasonably favorable to the other party."'
Brennan v. Bally Total Fitness, 198 F.Supp.2d 377, 382 (S.D.N.Y.

7

2002) (quoting Gillman, 73 N.Y.2d at 10).  Unconscionability in
New York is a "flexible" doctrine "intended to be sensitive to
the realities and nuances of the bargaining process." Gillman,
73 N.Y.2d at 10 (quoting Matter of State of New York v. Avco
Fin. Serv., 50 N.Y.2d 383, 389-390, 406 N.E.2d 1075).


   b. Procedural Unconscionability


        Under New York law, unconscionability requires "a
showing that the contract was both procedurally and
substantively unconscionable." Gillman, 73 N.Y.2d at 10.
Procedural unconscionability is "whether the party seeking to
enforce the contract has used high pressure tactics . . . and
whether there is inequality of bargaining power between the
parties." Sablosky v. Edward S. Gordon Co., Inc., 73 N.Y.2d
133, 139, 535 N.E.2d 643 (1989).  Further, procedural
unconscionability "requires an examination of the contract
formation process and the alleged lack of meaningful choice."
Gillman, 73 N.Y.2d at 10-11.


        Plaintiffs argue that there was an "inequality of
bargaining power" between the photographers and the AP.
Sablosky, 73 N.Y.2d at 139.  This inequality included that when
the negotiations begun, there were only a few weeks until the

2009 NFL season began. The AP had already secured an exclusive
agreement with the NFL in 2009. (SAC at ¶ 91.) Once AP had the
exclusive license with the NFL for all game photos, it increased
AP's leverage over the individual photographers. Plaintiffs
allege that the AP refused to allow them to directly negotiate
and discuss their concerns with AP's legal team or the lawyers
drafting their individual contracts. (SAC at ¶ 94.)

Further, Plaintiffs allege that they proposed several
changes to the contracts during a July 2009 call and that their
proposed changes were rejected. (SAC at ¶ 105.) When those
changes were rejected, the AP allegedly told Plaintiffs the
terms were "take-it-or-leave-it." Id. Parties in New York are
permitted to offer contracts on a take it or leave it basis
during negotiations. Ragone v. Atlantic Video at Manhattan
Center, 595 F.3d 115, 122 (2d Cir. 2010); Finkle and Ross v.
A.G. Becker Paribas, Inc., 622 F. Supp. 1505, 1511-12 (S.D.N.Y.
1985). Take it or leave it tactics (and a general refusal to
negotiate) are permitted when the party in an inferior
bargaining position can simply contract with a suitable
replacement. Nayal v. HIP Network Services IPA, Inc., 620
F.Supp.2d 566, 572 (S.D.N.Y. 2009) (finding an arbitration
clause was not unconscionable because other HMO health care
policies were available); Anonymous v. JP Morgan Chase & Co.,

9

No. 05 Civ. 2442, 2005 WL 2861589, at *6 (S.D.N.Y. Oct. 31, 2005) (the arbitration agreement for a credit card was not unconscionable because "the plaintiff had the ability to go to other sources of credit"); Bar-Ayal v. Time Warner Cable Inc., No. 03 Civ. 9905, 2006 WL 2990032, at *16 (S.D.N.Y. Oct. 16, 2006) (arbitration provision was not unconscionable because plaintiff "has not provided any evidence that he could not obtain high-speed Internet service from another provider").

However, this case differs from mandatory arbitration clauses in consumer agreements for widely available services like credit cards and health care plans. Here, there were no other opportunities for Plaintiffs to engage in their livelihood of photographing NFL football games other than to accept the Contributor Agreements with the AP, which was their primary source of income. (SAC at ¶ 108.) Further, not signing with AP would have meant losing access to all of the NFL photos they had already taken since AP had a retroactive exclusive license over all NFL photographs. (Id. at ¶ 111.) This is why Plaintiffs could not simply switch from photographing the NFL to another sport. Plaintiffs faced the difficult position of choosing between losing the rights to their vast collections of NFL photographs if they stayed with Getty or losing "the ability to

10

obtain credentials for any sporting events, including NCAA, MLB,
and NBA games" if they joined AP.  (Id. at 110.)

            While retroactive licenses are not alone
unconscionable, when combined with the exclusivity of their
ability to issue credentials to photographers and the AP's
refusal to negotiate -- Plaintiffs have adequately alleged an
inequality in bargaining power.

            Plaintiffs also alleged that the contributor
agreements are void for procedural unconscionability because
there were "deceptive or high-pressured tactics [] employed."
Gillman, 73 N.Y.2d at 11.  For example, Plaintiffs allege that
AP made material misrepresentations to them during the
negotiations for their contributor agreements about the AP's
agreement with the NFL.  (SAC at ¶¶ 96-99.)  These kinds of
misrepresentations are sufficient for procedural
unconscionability when ambiguous terms of the contract "may not
accurately represent the intentions of the parties".  McMahon v.
Eke-Nweke, 503 F. Supp. 2d 598, 606 (E.D.N.Y. 2007).  While the
terms in this case were not ambiguous, the same principle
applies.

11

Here, Plaintiffs allege that the terms do not reflect the parties' intent. Specifically, Plaintiffs allege that AP told them during negotiations that AP did not grant "the NFL a license to use contributor photos" and "did not intend to permit the NFL complimentary use of contributor photos, including Plaintiffs' collections." (SAC at ¶ 96.) Yet Plaintiffs allege that at the time of these statements, AP already had a contract with NFL providing for complimentary use of the photographs. (SAC at ¶¶ 96-99.) This is the kind of deception that the doctrine of unconscionability as applied in McMahon sought to avoid. (SAC at ¶¶ 96-104.) Plaintiffs will have to prove that the AP made these statements, but Plaintiffs have alleged that AP used deceptive tactics to persuade Plaintiffs to sign the contributor agreements.

Plaintiffs also allege that high-pressured tactics were employed. Gillman, 73 N.Y.2d at 11. During negotiations just weeks before the NFL season started, Plaintiffs allege they were threatened that if they did not sign the Contributor Agreements before the season started, they would not gain access to NFL games for the entire upcoming season. (SAC at ¶ 107.) Plaintiffs allege that photographing NFL events was the "primary basis of Plaintiffs' livelihoods." (Id. at ¶ 108.) Potentially this left Plaintiffs with the choice of sacrificing the primary

basis of their livelihoods or signing a contract for which the AP refused to negotiate key terms, which is why Plaintiffs adequately have pled procedural unconscionability. (Id. at ¶ 94, 104-106.)

Defendants' reliance on Don King Prods., Inc. v. Douglas for the proposition that the conduct at issue in the instant case cannot be characterized as "deceptive or high-pressure tactics" is unavailing. 742 F. Supp. 778 (S.D.N.Y. 1990). Douglas signed a contract with famous boxing promoter Don King under which King would have the exclusive right to arrange Douglas' fights. Id. at 781. There were a series of disputes, and Douglas sought to invalidate the contract and claimed that "King so dominates promotion of heavyweight fights that the Douglas-King contracts are inherently procedurally unconscionable." Id. at 780. The Court found that this was more of a quasi-antitrust claim and that the deficiency in the unconscionability argument was insufficient pleadings. Among other reasons, the Court held, "Douglas/Johnson make no allegation here that deceptive or high-pressure tactics were employed in concluding the contracts." Id. at 780.

However, there are more substantial allegations of unconscionability in this case than in Douglas. Here, the

13

timing of negotiations merely weeks before the beginning of the
NFL season, an unwillingness to engage in negotiations about key
terms, and fundamental misrepresentations about potential
revenue from licenses with the NFL together amount to
allegations of "deception and high-pressure" in this case.
Plaintiffs have adequately pled procedural unconscionability
because they sufficiently alleged that there was an unfair
imbalance in negotiating power and that Defendants used
deception and high-pressure tactics.

c. Substantive Unconscionability

Substantive unconscionability asks the Court to
examine "the substance of the bargain" to determine if "the
terms were unreasonably favorable to the party against whom
unconscionability is urged." Gillman, 73 N.Y.2d at 12.
Procedural and substantive unconscionability are evaluated on a
"sliding scale," such that "the more questionable the
meaningfulness of choice, the less imbalance in a contract's
terms should be tolerated and vice versa." State v. Wolowitz, 96
A.D.2d 47, 68, 468 N.Y.S.2d 131, 145 (2d Dep't 1983).

Here, Plaintiffs argue that in addition to the
negotiating tactics that were procedurally unconscionable that

14

the deal was fundamentally unreasonable.  Plaintiffs were told

and believed that they were providing AP with a license to their

photographs in exchange for royalties for all licenses AP

granted to third parties.  (SAC at ¶ 120.)  Plaintiffs allege

that Section 5.1 of the Contributor Agreements provided a list

of all exceptions to AP's obligations to pay royalties for

licensing Plaintiffs' photographs to third parties.  Id.  The

NFL was not listed as one of these exceptions.  This contractual

language matched the AP's representations to Plaintiffs that the

AP would charge the NFL for licenses to use Plaintiffs'

photographs.  (Id. at ¶ 121.)


Defendants argue that the Contributor Agreements are

not contracts that only a "delusion[al]" photographer would

accept.  (Citing Doctor's Associates, Inc. v. Jabush, 89 F.3d

109, 113 (2d Cir. 1996).)  They argue that Plaintiffs received

consideration for this bargain in the form of credentials to

take photographs and royalties for revenue-bearing sales, and

the ability to seek out other licenses for their work.  (Def.

Br. at 26.)  However, this depiction does not state what

Plaintiffs allege:  the NFL was the single largest licensee of

Plaintiffs photographs.  (Pl. Oppn. Br. at 26.)  Plaintiffs

wanted assurances that the NFL would be a revenue-bearing

licensee because that was how the Contributor Agreements would

15

be profitable for Plaintiffs since the NFL would utilize
thousands of Plaintiffs' photographs on their websites and other
mediums.  (SAC at ¶¶ 95-96.)  Giving these licenses away for
free to the NFL without telling Plaintiffs was a key component
of the bargain that is "so grossly unreasonable" as to be
unenforceable.  Gillman, 73 N.Y.2d at 10.

## d. Unconscionability Can Be Properly Considered at the Motion to Dismiss Stage and this Claim Sufficiently Alleges Unconscionability

The parties dispute whether unconscionability can be
properly considered at the motion to dismiss stage.  Defendants
cite several cases dismissing unconscionability claims at the
12(b)(6) stage.  However, these cases do not stand for the
principle that no case could show unconscionability -- just that
the parties in those cases had not sufficiently pled
unconscionability.  Grand Income Tax, Inc. v. HSBC Taxpayer
Financial Services, Inc., No. 08-CV-346, 2008 WL 5113646, at *7
(E.D.N.Y. Nov. 25, 2008) (finding that "the plaintiff must prove
that the party with superior bargaining power used it to take
unfair advantage of its weaker counterpart"); Pacs Industries,
Inc. v. Cutler-Hammer, Inc., 103 F.Supp.2d 570, 573 (E.D.N.Y.
2000) ("offer[ed] no facts or allegations to support that
assertion [of unconscionability]").  On the other hand,

16

Plaintiffs argue that a court could never dismiss a case with
unconscionability claims because a hearing is required to test
the veracity of the claims.  Schwartzbaum v. Emigrant Mortg.
Co., No. 09-Civ-3848 (SCR), 2010 WL 2484116, at *5 (S.D.N.Y.
June 16, 2010) ("Since a determination of unconscionability
requires a fact-specific inquiry, it docs [sic] not lend itself
to a Rule 12(b)(6) ruling that addresses the sufficiency of the
pleadings").

        The cases do not establish a bright-line rule in favor
of either party's position.  Here, this unconscionability claim
does survive a motion to dismiss because Plaintiffs' allegations
as discussed above sufficiently pled both procedural and
substantive unconscionability.

## e. Plaintiffs' Unconscionability Claim Is Not Waived

        Defendants argue that the unconscionability claims
fail because "Plaintiffs failed to act promptly in repudiating
the contract as unconscionable and therefore waived the
defense."  (AP Br. at 22.)  However, while Defendants cite many
cases about repudiation and waiver for duress and fraudulent
inducement, they do not cite any cases that this concept applies
to unconscionability claims.  Mandavia v. Columbia University,

912 F.Supp.2d 119, 128 (S.D.N.Y. 2012) (when a contract is signed under duress, it is voidable, not void); DiRose v. PK Management Corp., 691 F.2d 628, 633-34 (2d Cir. 1982) ("A contract or release, the execution of which is induced by duress, is voidable, not void, and the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so."); Lawrence v. Kennedy, 113 A.D.3d 731, 732, 979 N.Y.S.2d 347, 349 (2d Dep't 2014) (party waived fraudulent inducement claim for accepting benefits under the contract and not promptly repudiating).

No authority has been cited applying this doctrine to unconscionability and it will not be applied in this case.

## III. The Motion To Dismiss Plaintiffs' Contract Claims for Duress Is Granted

The Court also denied the Plaintiffs' claims for duress in the March 27, 2015 opinion because the claims were not pled in the FAC and were presented for the first time in Plaintiffs' motion to dismiss opposition brief. 96 F.Supp.3d at 132-133. While Plaintiffs have pled claims for duress in the SAC, those claims are dismissed again here. As noted above, even if Plaintiffs adequately pled a claim for duress, in New York when a party is under duress it must promptly act to

18

repudiate the contract.  DiRose v. PK Management Corp., 691 F.2d 628, 633-34 (2d Cir. 1982).  Here, Plaintiffs have continued to perform under the contract and have accepted the benefit of credentials from the AP to photograph NFL games.  The duress argument is therefore waived and the Court does not need to reach the merits of duress.  Therefore, the motion to dismiss with respect to duress is granted.

**Conclusion**

For the reasons set forth above, Getty's motion to compel arbitration is granted and the case against Getty is dismissed with leave to renew after the completion of the arbitration.  The motions to dismiss brought by the NFL Defendants, the AP, and Replay are granted in part and denied in part as set forth above.

It is so ordered.

New York, NY
July  15, 2016

_____
ROBERT W.  SWEET
U.S.D.J.